Present: Hassell, C.J., Koontz, Kinser, Goodwyn, Millette, and
Mims, JJ., and Russell, S.J.

MATTHEW EDWARD SIMMS

OPINION BY
v.    Record No. 091762    JUSTICE S. BERNARD GOODWYN
January 13, 2011
RUBY TUESDAY, INC., ET AL.

FROM THE COURT OF APPEALS OF VIRGINIA

In this appeal of a worker's compensation proceeding, we

consider whether the actual risk test an7alysis articulated in

Hilton v. Martin, 275 Va. 176, 654 S.E.2d 572 (2008),

materially changed the "innocent victim of horseplay" law

previously articulated and applied by the Court of Appeals of

Virginia and the Virginia Workers' Compensation Commission.

Background

This case arises from a claim filed by Matthew Edward

Simms (Simms) with the Virginia Workers' Compensation

Commission (the Commission), in which he sought coverage under

the Workers' Compensation Act, Code § 65.2-100 et seq. (the

Act), for an injury that occurred during, and at the place of,

his employment. Simms was employed as a server at a national

chain restaurant in Manassas. During his work shift, Simms

walked into the kitchen to enter an order into a computer and

to print a check for a customer. There were three other

employees in the kitchen at that time who started throwing ice

at him. Simms testified that he knew the employees who were

throwing ice, that he had contact with them outside of work, and that he considered them friends.

Simms testified that after a piece of ice hit him in the back of the head, he turned around. As he turned around, he felt a pain in his left shoulder. Simms continued to be hit in the chest and face with pieces of ice and tried to lift his hand to block a piece of ice from hitting him in the face. As he lifted his left arm, while holding the book he used to take orders, he felt his shoulder dislocate.

Simms was taken to a hospital where he received treatment for the injury, and was referred to a doctor for follow-up treatment. Simms alleged that after the injury, he was unable to use his shoulder in everyday activities, and he was unable to work for a period of time. He also claimed that he later required additional medical treatment for his injury, including surgery, which resulted in an additional period of temporary total disability.

After hearing testimony and reviewing Simms' medical records and deposition testimony, a deputy commissioner of the Commission concluded that Simms was the innocent victim of horseplay perpetrated by co-employees. Citing Dublin Garment Co. v. Jones, 2 Va. App. 165, 342 S.E.2d 638 (1986), the deputy commissioner concluded that Simms sustained an injury by accident arising out of and in the course of his employment

and that Simms' injury was compensable under the Act.  Simms was awarded a 4-day period of temporary total disability.  However, prior to his injury at work, Simms' shoulder had dislocated on several occasions, unrelated to his employment, and the deputy commissioner found that the surgery Simms later had on the shoulder and the following period of temporary total disability had not been proven to be related to his injury at work.

Both parties appealed to the full Commission.  The Commission stated that even though Simms was an innocent victim of horseplay, the Hilton decision had "materially changed the 'innocent victim of horseplay' law."  The Commission stated that there was "no connection between the conditions under which the employer required the work to be performed and the assault by the co-workers" as required by Hilton and, reversing the deputy commissioner, ruled that even though Simms was an innocent victim of workplace horseplay, his injury did not arise out of his employment.  Simms appealed to the Court of Appeals.

On appeal, the Court of Appeals affirmed the Commission.  Simms v. Ruby Tuesday, Inc., 54 Va. App. 388, 389, 679 S.E.2d 555, 556 (2009).  The Court of Appeals agreed with the Commission's analysis that Hilton called into question "the continued viability of the horseplay doctrine as set forth in

3

Dublin." Id. at 394, 679 S.E.2d at 558. It therefore declined to apply the horseplay doctrine and concluded that even though Simms was the innocent victim of horseplay, the "arising out of" prong of the test for whether an injury comes within the Act requires that there be an additional causal connection between the employee's injury and the conditions under which the employer requires the work to be done. Id. at 392-93, 679 S.E.2d at 557-58. The Court of Appeals affirmed the Commission's finding that no such causal connection existed in Simms' case, and that Simms' injuries, therefore, did not arise out of his employment, and were not covered under the Act. Id. at 394, 679 S.E.2d at 558.

The Horseplay Doctrine

Before we analyze this case, it is helpful to review the history and policy of the horseplay doctrine.

Before the adoption of workers' compensation laws, employees lost approximately eighty percent of their cases. Samuel B. Horovitz, Assaults and Horseplay Under Workmen's Compensation Laws, 41 Ill. L. Rev. 311, 311 (1946). "The reason for this was clear: the doctrines of contributory negligence, assumption of risk, fellow-servant, proximate cause, intervening cause, scope of employment, and other narrow common law theories weighed so heavily against the worker that the hands of the later common law courts were

4

tied." Id. Recognizing the need for a new standard of liability, states began enacting workers' compensation laws as early as 1911, whereby "liability depended not on negligence, not on fault, but on the relation of the injury to the employment, or more specifically, on the injury 'arising out of and in the course of employment.' " Id. This Commonwealth was no different. In 1918, the General Assembly adopted the Act "for the beneficent purpose of attaining a humanitarian end which had, hitherto, been frustrated by the inexorable rules of the common law." A. Wilson & Co. v. Mathews, 170 Va. 164, 167, 195 S.E. 490, 491 (1938).

Soon after these workers' compensation laws were enacted, commissions and courts were called upon to answer the very question this Court confronts today: whether innocent, nonparticipating victims of horseplay are entitled to coverage. See Horovitz, supra, at 314-15. Early on, commissions attempted to make awards to such victims. Id. at 315. But those awards were often reversed when they reached the highest courts. Id. For example, in Lee's Case, 134 N.E. 268, 269 (Mass. 1922), the Supreme Judicial Court of Massachusetts reversed an award to a worker who was injured when he was knocked down by his co-workers while they were fooling around, finding that "[s]uch acts, whether done in a spirit of play or from a malicious motive, have no relation

5

whatever to the employment; and they are wholly outside the scope of the employment of those who caused the injury."

Not all courts, however, followed the rule applied in Lee's Case. Indeed, it was flatly rejected by then-Judge Cardozo in Leonbruno v. Champlain Silk Mills, 128 N.E. 711 (N.Y. 1920). There, a worker lost his eyesight when he was hit by an apple that was thrown "in sport" by another worker. Id. at 711. The worker "did not participate in the horseplay, and had no knowledge of it till injured." Id. In determining that the injury arose out of the worker's employment, Judge Cardozo reasoned:

> Whatever men and boys will do, when gathered together in such surroundings, at all events if it is something reasonably to be expected, was one of the perils of his service. . . . [I]t was but natural to expect them to deport themselves as young men and boys, replete with the activities of life and health. For workmen of that age or even of maturer years to indulge in a moment's diversion from work to joke or play a prank upon a fellow workman, is a matter of common knowledge to every one who employs labor. The [worker] was injured, not merely while he was in a factory, but because he was in a factory, in touch with associations and conditions inseparable from factory life. The risks of such associations and conditions were risks of the employment.

Id. (internal quotation marks and citations omitted).

Eventually, courts began to "s[ee] the logic of [Cardozo's] argument" and overrule their prior decisions denying coverage to innocent, nonparticipating victims of horseplay. Horovitz, supra, at 319. And "[i]t is now clearly

6

established that the non-participating victim of horseplay may recover compensation." 2 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law § 23.02 (2010); see also Coleman v. Armour Swift-Eckrich, 130 P.3d 111, 116 (Kan. 2006) (overturning nearly 100 years of precedent and adopting the horseplay doctrine after being "persuaded by the overwhelming weight of . . . authority in . . . sister states and current legal commentary").

In such cases for over 90 years, the Commission and its predecessor Commission have held that the innocent non-participating victim of workplace horseplay is entitled to workers' compensation benefits. See, e.g., Allen v. Sloane & Co., 2 O.I.C. 449, 454 (1920). Similarly for nearly 25 years, the courts of this Commonwealth have approved the rationale in these horseplay cases. See Dublin Garment Co., 2 Va. App. at 167-68, 342 S.E.2d at 639.

## Analysis

An injury comes within the scope of the Act if it results from an accident arising out of and in the course of the injured employee's employment. Code § 65.2-101; see Hilton, 275 Va. at 180, 654 S.E.2d at 574. "When an employee sustains such an injury, the Act provides the sole and exclusive remedy available against the employer." Butler v. Southern States Cooperative, Inc., 270 Va. 459, 465, 620 S.E.2d 768, 772

7

(2005); see Code § 65.2-307(A). In the instant case, it is undisputed that Simms' injury resulted from an accident "in the course of" his employment at the restaurant. Thus, coverage of his injury under the Act hinges upon whether Simms' injury "aris[es] out of" his employment.

Simms argues that the Court of Appeals erred in applying the Hilton analysis in this case, which involves an innocent victim of horseplay. Simms contends that Hilton is not controlling in determining whether his injury arose out of his employment, because Hilton concerned an assault. We agree.

As pertinent to the issue presented in the present case, the Court of Appeals had this to say regarding our decision in Hilton:

> Upon our review of Hilton, we believe the continued viability of the horseplay doctrine as set forth in Dublin is called into serious question. It is clear that Hilton involved a playful act, perpetrated upon a non-participating employee by a co-worker, resulting in a willful or unlawful touching, and causing subsequent injury to the employee. Notwithstanding the fact that Hilton involved an innocent victim of horseplay, the Supreme Court concluded that such an injury did not arise out of employment. Under these circumstances, we decline [Simms'] invitation to apply the horseplay doctrine in the present case. Thus, we conclude that Hilton requires that we find [Simms], who was an innocent victim of horseplay, did not sustain an injury that arises out of [his] employment.

Simms, 54 Va. App. at 394, 679 S.E.2d at 558 (citation omitted).

8

The Court of Appeals draws many conclusions not supported by our analysis in Hilton.  In that case, the claimant was severely injured when a co-worker turned on the power to a manual cardiac defibrillator, adjusted its energy to 150 joules, and touched the defibrillator paddles to her left shoulder and left breast, while simultaneously activating them.  The claimant ultimately died of "electrocution and cardiac arrest caused by being hit with a charged defibrillator."  Hilton, 275 Va. at 178-79, 654 S.E.2d at 573 (internal quotation marks omitted).  In Hilton, we did not reference Dublin Garment Co. or the horseplay doctrine.  Contrary to the view of the Court of Appeals, we did not conclude that the case "involved a playful act."  Rather, we considered the co-worker's act as an assault, id. at 178, 654 S.E.2d at 573, and relied upon a number of our prior cases involving assaults upon employees to conclude that "'[i]f the assault is personal to the employee and not directed against him as an employee or because of his employment, the [resulting] injury does not arise out of the employment.'" Id. at 180, 654 S.E.2d at 574 (quoting Richmond Newspapers v. Hazelwood, 249 Va. 369, 373, 457 S.E.2d 56, 58 (1995) ("goosing" by fellow employee considered an "assault" personal to employee that did not arise out of the employment)).  In Hilton, we also referenced Reamer v. National Service

9

Industries, 237 Va. 466, 377 S.E.2d 627 (1989) (employee raped); Metcalf v. A. M. Express Moving Systems, Inc., 230 Va. 464, 339 S.E.2d 177 (1986) (employee shot); and City of Richmond v. Braxton, 230 Va. 161, 335 S.E.2d 259 (1985) (employee sexually assaulted). Pelting a co-worker with ice particles in a playful manner is readily distinguishable from the assaults in those cases.

This Court has never addressed the issue of the "horseplay doctrine." The Court of Appeals and the Commission have applied it to a certain subset of incidents when an unsuspecting, nonparticipating claimant is injured by the playful or joking actions of a co-worker. For the reasons stated in the Leonbruno decision by Judge Cardozo, in the worker's compensation context, the instance when a non-participating employee is injured by horseplay encountered in the workplace is differentiated from and distinct from the instance when a worker is injured by an assault, although "[i]t is hard to imagine a form of horseplay that causes injury that is not [technically] either an assault or a battery." Park Oil Co. v. Parham, 1 Va. App. 166, 170, 336 S.E.2d 531, 534 (1985).

As we reiterated in Hilton, this Court applies "the 'actual risk' test" to determine if an injury arises out of employment. 275 Va. at 180, 654 S.E.2d at 574. Under the

10

actual risk test, an injury comes within the Act "only if there is a causal connection between the employee's injury and the conditions under which the employer requires the work to be done."  Id.; see also Butler, 270 Va. at 465, 620 S.E.2d at 772; Olsten of Richmond v. Leftwich, 230 Va. 317, 319, 336 S.E.2d 893, 894 (1985).  Concerning the actual risk test, our Court has stated on numerous occasions:

> Under this test, if the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises "out of" the employment.  But [the applicable test] excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause and which comes from a hazard to which the workmen would have been equally exposed apart from the employment.  The causative danger must be peculiar to the work and not common to the neighborhood.  It must be incidental to the character of the business and not independent of the relation of master and servant.  It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence.

Bradshaw v. Aronovitch, 170 Va. 329, 335, 196 S.E. 684, 686 (1938) (quoting In re: McNichol, 102 N.E. 697, 697 (Mass. 1913)); Combs v. Virginia Elec. & Power Co., 259 Va. 503, 510, 525 S.E.2d 278, 282 (2000); Hazelwood, 249 Va. at 372-73, 457 S.E.2d at 58; Metcalf, 230 Va. at 468, 339 S.E.2d at 180; Braxton, 230 Va. at 164, 335 S.E.2d at 261; R & T Investments,

11

Ltd. v. Johns, 228 Va. 249, 252-53, 321 S.E.2d 287, 289 (1984).

Applying the actual risk test, injuries to a non-participating innocent victim that result from workplace horseplay have been held to be an actual risk of the workplace because "the work place creates [the] situation" that results in the injury. Park Oil, 1 Va. App. at 171, 336 S.E.2d at 534. "The theory of recovery is that the work place creates a situation where workers, being what they are – fallible and sometimes playful human beings – will from time to time engage in pranks, some of which are dangerous." Id. In essence, the playful or joking actions of the fellow employee are found to be an actual risk of the employment because horseplay is a natural incident of work contemplated by a reasonable person familiar with the whole situation, as a result of the exposure occasioned by the nature of the employment. Therefore, unlike assault cases where a causal connection needs to be proven between the assault and the employment, when a fellow employee engages in horseplay by doing something in a playful or joking manner that injures an innocent nonparticipating co-worker, such injury is inherent to the injured co-worker's employment or is directed toward the co-worker as an employee. See Dublin Garment Co., 2 Va. App. at 168, 342 S.E.2d at 639. The Court of Appeals stated the Virginia horseplay doctrine as

12

follows: "[W]hen an employee is an innocent nonparticipating victim of a co-worker's playful or joking actions, any resulting injuries are compensable." Id. at 167, 342 S.E.2d at 639 (internal quotation marks omitted).

The workplace horseplay doctrine has withstood the test of time nationally since it first was enunciated by Judge Cardozo. It has been accepted in the Commonwealth without controversy; the General Assembly has had twenty-five years to legislatively change the holding in Dublin Garment Co. and has not done so. In deciding Hilton, it was not our intention to scuttle the horseplay doctrine, or to impose any additional burden of proof upon claimants found to be the innocent victims of workplace horseplay. The analysis stated in Hilton, regarding the actual risk test, is applicable in worker's compensation matters concerning an assault, not those involving an innocent victim of horseplay.[*]

Accordingly, we will reverse the Court of Appeals and remand the case to the Court of Appeals with direction to remand the case to the Commission so that the Commission may

---

[*] See Hodges v. Bassett Furniture Co., 2 O.I.C. 466, 469-70 (1920) (the present Commission's predecessors, the Industrial Commission, distinguished between cases involving horseplay and those involving "unprovoked . . . felonious assault upon one employee by another," finding that the contrasting situations called for application of different rules).

13

consider the claim consistent with the law as stated in this opinion.

Reversed and remanded.

JUSTICE MIMS, with whom SENIOR JUSTICE RUSSELL joins, concurring.

The Court lays its finger on the error made by the Workers' Compensation Commission and Court of Appeals: those tribunals misinterpreted the scope of our holding in Hilton v. Martin, 275 Va. 176, 654 S.E.2d 572 (2008), and looked for a causal connection between an assault and the employment in this case. But there was no underlying assault.

In Park Oil Co. v. Parham, 1 Va. App. 166, 336 S.E.2d 531 (1985), the Court of Appeals opined that "[i]t is hard to imagine a form of horseplay that causes injury that is not either an assault or a battery." Id. at 170, 336 S.E.2d at 534. That dictum is not accurate. While it is difficult to imagine horseplay that causes injury that does not involve contact or the apprehension of contact, not all contact is battery and not all apprehension of contact is assault. Rather, a battery consists of contact "done in a rude, insolent, or angry manner," Crosswhite v. Barnes, 139 Va. 471, 477, 124 S.E. 242, 244 (1924), "which is neither consented to, excused, nor justified." Koffman v. Garnett, 265 Va. 12, 16, 574 S.E.2d 258, 261 (2003). Likewise, an assault is "an act intended to cause either harmful or offensive contact with

14

another person or apprehension of such contact, and that creates in that other person's mind a reasonable apprehension of an imminent battery." Id.; accord Etherton v. Doe, 268 Va. 209, 213, 597 S.E.2d 87, 89 (2004).

Simms' co-workers neither battered nor assaulted him. They did not pelt him with ice in a rude, insolent, or angry manner. Their conduct was jocular and playful. They did not intend to cause him harm or offense, and Simms did not apprehend the contact to be rude, insolent, angry, harmful, or offensive. These facts clearly are distinguishable from those in Hilton, where the victim "screamed, 'Get those away from me,' and pushed [the assailant] back" in an attempt to escape. 275 Va. at 179, 654 S.E.2d at 573. These facts are much closer to those in Dublin Garment Co. v. Jones, 2 Va. App. 165, 342 S.E.2d 638 (1986), where the injured employee "interpreted [the contact] as a 'friendly gesture.' " Id. at 166, 342 S.E.2d at 638.[1]

Thus, there are two clear, distinct lines of cases that may apply when a worker is injured by a co-worker. Where the contact or apprehension of contact giving rise to the injury is not a common law assault or battery, the injury may result

---

[1] By comparing the facts of this case with Hilton and Dublin Garment Co., I do not suggest that whether workplace contact is horseplay turns on the perspective of the injured employee. Nevertheless, the common law intentional torts of

15

from mere horseplay.  In such cases, a finding that the injury does result from horseplay satisfies the actual risk test for the reasons enunciated by the majority:  "the work place creates a situation where workers . . . will from time to time engage in pranks, some of which are dangerous." Alternatively, where the injury arises from a common law assault or battery, as in the line of cases culminating with Hilton,[2] the actual risk test requires a causal connection between the tort and the employment.

This rule of law is pragmatic and sensible.  Where there is a tort not causally connected to the injured employee's employment, liability rests on the tortfeasor rather than the employer.  Conversely, where the tort is causally connected to the employment or where there is no tort at all, the injury is

_____

assault and battery require some consideration of the intent of the perpetrator and the perception of his victim.

[2] It is clear that Hilton presupposes a tortious act: When an " 'assault is personal to the employee and not directed against him as an employee or because of his employment, the [resulting] injury does not arise out of the employment.' "  275 Va. at 180, 654 S.E.2d at 574 (quoting Richmond Newspapers v. Hazelwood, 249 Va. 369, 373, 457 S.E.2d 56, 58 (1995) (emphasis added).  "An injury resulting from an assault arises out of the injured person's employment when it is directed at the victim as an employee."  Id. at 181, 654 S.E.2d at 574-75 (emphasis added and original emphasis omitted).  Accordingly, the Court's comment in that case that "[i]t is immaterial whether the assailant's subjective motivation is playful, amorous, vindictive, or hostile," id. at 181, 654 S.E.2d at 574, is limited to those contexts in which a tortious act already has been determined.

within the scope of the Workers' Compensation Act.[3]  Because the Commission overlooked this distinction and the Court of Appeals affirmed its error, I concur in the judgment of this Court reversing the Court of Appeals.

---

[3] Thus, in deciding whether the Workers' Compensation Act provides the exclusive remedy for an employee injured as a result of alleged workplace horseplay, the Commission or court hearing the case must first determine whether the cause of the injury amounted to a common law assault or battery.