COURT OF APPEALS OF VIRGINIA


Present:   Judges Frank, Kelsey and McCullough
Argued at Salem, Virginia


WYTHE COUNTY COMMUNITY HOSPITAL AND
  TRAVELERS INDEMNITY COMPANY OF AMERICA
                                                    MEMORANDUM OPINION[*] BY
v.      Record No. 0208-11-3                    JUDGE STEPHEN R. McCULLOUGH
                                                          OCTOBER 4, 2011
DONNA TURPIN


          FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

          Robert M. Himmel (Lucas & Kite, PLC, on brief), for appellants.

          No brief or argument for appellee.


      The Workers' Compensation Commission awarded medical benefits to Donna Turpin for

injuries sustained following an automobile accident.  Wythe County Community Hospital and

Travelers Indemnity Company of America (the employer) appeal, contending that Turpin was not

entitled to benefits because her injuries did not arise out of her employment.  Under the particular

facts of this case, we agree with the commission that the injuries arose out of Turpin's employment

and, therefore, we affirm the decision of the commission.

                                      BACKGROUND

      "The commission's decision that an accident arises out of the employment is a mixed

question of law and fact and is therefore reviewable on appeal."  Green Hand Nursery, Inc. v.

Loveless, 55 Va. App. 134, 140, 684 S.E.2d 818, 821 (2009) (quoting City of Waynesboro v.

Griffin, 51 Va. App. 308, 312, 657 S.E.2d 782, 784 (2008)).  Furthermore, "[b]y statute, the

commission's factual findings are conclusive and binding on this Court when those findings are

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

based on credible evidence." Id. (citing Code § 65.2-706; Griffin, 51 Va. App. at 312, 657 S.E.2d at 784).

Under the Workers' Compensation Act, an employee must prove by a preponderance of the evidence that her injury arose "out of and in the course of [her] employment" to qualify for benefits. Code § 65.2-101. Whether an injury arises "out of" employment is a "separate and distinct" concept from whether the injury arises "in the course of" employment. County of Chesterfield v. Johnson, 237 Va. 180, 183, 376 S.E.2d 73, 74 (1989). Here, the employer challenges only whether the injury arose "out of" Ms. Turpin's employment.

"'[A]rising out of' refers to the origin or cause of the injury." Richmond Mem'l Hosp. v. Crane, 222 Va. 283, 285, 278 S.E.2d 877, 878 (1981) (citing Baggett & Meador Cos. v. Dillon, 219 Va. 633, 637, 248 S.E.2d 819, 822 (1978)). To assess whether the injury arose out of the employment, Virginia has adopted the "actual risk test," "which requires only that the employment expose the workman to the particular danger from which he was injured, notwithstanding the exposure of the public generally to like risks." Lucas v. Lucas, 212 Va. 561, 563, 186 S.E.2d 63, 64 (1972) (citing Immer and Co. v. Brosnahan, 207 Va. 720, 725, 152 S.E.2d 254, 257 (1967)).

A final principle of construction governs our analysis. The words "'arising out of and in the course of the employment,' should be liberally construed to carry out the humane and beneficent purposes of the Workmen's Compensation Act." Conner v. Bragg, 203 Va. 204, 207, 123 S.E.2d 393, 396 (1962) (citing Norfolk & Wash. Steamboat Co. v. Holladay, 174 Va. 152, 157, 5 S.E.2d 486, 488 (1939); Bradshaw v. Aronovitch, 170 Va. 329, 336, 196 S.E. 684, 686 (1938); Cohen v. Cohen's Dep't Store, 171 Va. 106, 109, 110, 198 S.E. 476, 477 (1938)). At the same time, "the words cannot be liberalized by judicial interpretation for the purpose of allowing compensation on every claim asserted." Id. at 208, 123 S.E.2d at 396 (citing Van Geuder v. Commonwealth, 192 Va.

548, 553, 65 S.E.2d 565, 568 (1951); <u>Humphries v. Newport News Shipbuilding & Dry Dock Co.,</u> 183 Va. 466, 479, 32 S.E.2d 689, 695 (1945)).

The evidence established that Turpin worked on weekends as a hospice nurse for Wythe County Community Hospital. She was on call from 4:30 p.m. on Fridays until 8:00 a.m. on Monday mornings. The principal means of contacting Turpin was through a pager provided and paid for by her employer. When the pager did not work, Turpin's personal cell phone served as the backup means of reaching her. Her home telephone was the third backup. Turpin explained that pagers often are unreliable, and, consequently, she kept her cell phone in her pocket at all times while on call. She testified that she was "very in tune to both [her] beeper and [her] cell phone," noting that "that is what I do from 4:30 [p.m.] Friday until 8:00 a.m. . . . Monday morning is respond to beepers and cell phones. That is what I am programmed to do." She explained that when she received a page or a call on her cell phone while she was driving, she pulled over before answering the call. Turpin further testified that her family and friends knew that she worked on the weekends, and they were aware that they should not contact her during this time. In the event of an emergency, Turpin asked her friends and family to call her husband rather than her. She noted that she does not usually have her cell phone on her person unless she is working.

Turpin's duties as a hospice nurse often required her to drive and to work from her personal vehicle. She stored supplies in her car, including her nursing bag. She was reimbursed for the mileage she incurred while traveling to the office or to visit patients.

On November 7, 2009, at about 8:15 p.m., Turpin was driving home on mountainous roads following a mandatory in-service training at the hospice office. This trip qualified for mileage reimbursement. Earlier in the day, she had driven to the homes of four patients, and had responded to twelve different calls or pages, although she could not recall how many of these were beeps on her pager and how many were calls on her cell phone. The front face of her flip phone suddenly

illuminated. The phone was on her person, in one of the front pockets of her nursing uniform. She did not hear it ring. The light of the phone caught her attention, and she looked down for "just a couple of seconds." Turpin explained that she looked down on the assumption that it was her employer trying to call her.

Her momentary distraction caused her tires to slide on some gravel, and she quickly lost control of the car. Her car skidded out of control until it struck the bank on the other side of the road.

Turpin sustained injuries in the accident and applied for workers' compensation benefits. The deputy commissioner found the accident compensable on these specific facts. The employer appealed to the commission, arguing, as it does here, that "the claimant did not suffer an injury that arose out of her employment." The commission disagreed and affirmed the award of benefits.

ANALYSIS

Cell phones and other communication devices are now ubiquitous. Employers commonly contact employees through such devices, including when the employees are not on the employer's premises. The mere possibility that a call on a cell phone might originate from an employer does not make any injury that occurs while the employee attempts to respond to the call, or a perceived call, one that arises out of employment. We conclude, however, on the discrete facts before us, that Turpin's injury was one that arose out of her employment.

Viewed under the appropriate standard, the evidence established that Turpin's job as a hospice nurse required her to work from her car, and to drive on mountainous roads to see patients and to pick up supplies. She was required to monitor her beeper and cell phone at all times while on call in the event her employer called her. Her employer, in fact, frequently contacted her via her personal cell phone. Turpin had instructed friends and family not to call her cell phone when she was on call and that they instead should call her husband. Turpin ordinarily did not carry a cell

phone on her person, but she did carry her cell phone with her at all times while on call. In short, the evidence established that, when she was on call, her cell phone use effectively was reserved for contact with her employer.

When Turpin's cell phone illuminated in the pocket of her nurse's uniform, she looked down, naturally assuming it would be a call from her employer. Her response to the illumination of her telephone was more than "an impulsive respons[e] to an unexpected stimulus," as the employer argues. Rather, her response stemmed from her particular attentiveness to the distinct requirements of her job, specifically, that she carefully monitor her cell phone for calls from her employer during the times that she was on call.

For the same reason, the fact that, with the benefit of hindsight, it can be determined that the illumination of Turpin's cell phone did not stem from a work-related call does not change the outcome. The test is not whether an *actual call* was from the employer, but whether *an injury* can "'fairly be traced to the employment as a contributing proximate cause.'" Simms v. Ruby Tuesday, Inc., 281 Va. 114, 122, 704 S.E.2d 359, 363 (2011) (quoting Bradshaw, 170 Va. at 335, 196 S.E. at 686). When Turpin's cell phone illuminated, she naturally looked down to determine whether that illumination was a call from her employer that she needed to answer. Her job required her to monitor her cell phone at all times, including while driving. Turpin's employer regularly relied on her cell phone to reach her when she was on call, whereas her family and friends did not. We conclude that the commission correctly found, on these specific facts, "the causal connection between the claimant's injury and the conditions under which the employer require[d] the work to be performed." United Parcel Serv. v. Fetterman, 230 Va. 257, 258, 336 S.E.2d 892, 893 (1958) (citing R & T Invs. v. Johns, 228 Va. 249, 252, 321 S.E.2d 287, 289 (1984)). We therefore affirm the decision of the commission.

Affirmed.

Kelsey, J., dissenting.

The commission held Turpin's accident was caused by her inattentive "response to a *potential* work-related contact." Turpin v. Wythe Cnty. Cmty. Hosp., 2010 Va. Wrk. Comp. LEXIS 795, at *6 (Dec. 29, 2010) (emphasis added). The arising-out-of-employment test, however, requires the accident to *in fact* arise out of the employment — not potentially arise, almost arise, or come very near arising out of the employment. The test "excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause and which comes from a hazard to which the workmen would have been equally exposed apart from the employment." Simms v. Ruby Tuesday, Inc., 281 Va. 114, 122-23, 704 S.E.2d 359, 363 (2011) (citation omitted).

In this case, Turpin's accident cannot "fairly be traced," id., to her employment. She was on call, but she was not in fact called. No evidence suggests Turpin's employer called her personal cell phone.[1] More importantly, no evidence suggests *anyone* called Turpin. Turpin conceded she did not "know if it was a call or not." App. at 62. She merely saw a light illuminate on her cell phone. Id. at 61. She did not know then, and does not know now, why the light came on. Id. at 36-37. She does not recall hearing the cell phone ring, although she was certain the "ringer" was on because she "always" kept the ringer on. Id. at 35; see id. at 67. For all we know, the light on Turpin's cell phone could have illuminated for any number of reasons,

---

[1] When we are presented with "essentially undisputed facts," as we are here, a *de novo* standard of appellate review governs the question whether the injury satisfies the "actual risk" test. Hilton v. Martin, 275 Va. 176, 180, 654 S.E.2d 572, 574 (2008) (characterizing the "arising out of" issue as a "question of law" when the parties present undisputed facts). The undisputed facts in this case come exclusively from Turpin's testimony in her deposition and at the evidentiary hearing before the deputy commissioner. See Turpin, 2010 Va. Wrk. Comp. LEXIS 795, at *2 n.2 ("The claimant also testified by deposition taken on July 20, 2010. We reviewed the deposition in its entirety and it was consistent with her hearing testimony."); App. at 55 (admitting deposition transcript into the evidentiary record).

such as signaling entry into or exit from a cellular service area, <u>see</u> <u>id.</u> at 28-29, indicating a low battery, or responding to an accidental contact with the seatbelt, <u>see</u> <u>id.</u> at 72-73.

Turpin admitted she "had no idea at the time" whether she was receiving a phone call. <u>Id.</u> at 36. Prior to the accident, she did not "make any movement" to remove the cell phone from her pocket to answer it. <u>Id.</u> at 68. "I just knew that that light came on and I looked down." <u>Id.</u> at 36. "So, it may not [have] even been a call?" <u>Id.</u> at 45. "May not have been." <u>Id.</u> "Okay, and you don't have any evidence that you were actually receiving a telephone call?" <u>Id.</u> at 67. "No, but I never . . . looked to see." <u>Id.</u> "*I don't know if it was a call or not*," Turpin conceded. <u>Id.</u> at 62 (emphasis added).

I agree an on-call employee would be covered under the arising-out-of-employment standard if she actually received a call from her employer. I question whether an on-call employee would be covered if she merely attempted to answer an *actual* incoming call that *might* have been (but in fact was not) from her employer. But I cannot agree that coverage should be extended to an employee who had "no idea" if she was even receiving a call at all — whether from her employer or anyone else — and concedes she has no "evidence" someone had called her. <u>See</u> <u>id.</u> at 36, 67.

In short, Turpin apparently assumed she was receiving a call and assumed further it was from her employer — despite conceding she has no evidence to support either assumption. No matter how liberally we construe the workers' compensation statute, this is simply one insupportable assumption too many.

I respectfully dissent.