COURT OF APPEALS OF VIRGINIA

Present:   Judges Frank, Beales and Senior Judge Clements
Argued at Richmond, Virginia


VCU HEALTH SYSTEM AUTHORITY-WC
  AND VCU HEALTH SYSTEM AUTHORITY
                                                   MEMORANDUM OPINION[*] BY
v.      Record No. 0099-14-2                       JUDGE RANDOLPH A. BEALES
                                                   OCTOBER 14, 2014
MARSHA BOOTH


FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

James G. Muncie, Jr. (Midkiff, Muncie & Ross, P.C., on brief), for
appellant.

Gregory O. Harbison (Harbison & Kavanagh, PLLC, on brief), for
appellee.


VCU Health System Authority and its insurer (collectively, employer) appeal the

decision of the Workers' Compensation Commission (the commission) awarding medical

benefits to the claimant, Marsha Booth, relating to a workplace injury Ms. Booth suffered on

July 23, 2012.  Employer claims that the commission erred in finding that the claimant's injury

arose out of her employment.  Employer contends that no credible evidence supports the

commission's finding.  For the following reasons, we affirm the commission.

I. BACKGROUND

On July 23, 2012, claimant, who is a Senior Administrative Assistant in the Department

of Emergency Medicine at VCU, tripped over the threshold of a doorway while at work, and fell.

Claimant timely filed claims for benefits on August 8, 2012; August 27, 2012; and, October 31,

2012.  She alleged that she suffered compensable injuries to her right shoulder, right hip, right

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

knee, left knee, and lower back. Claimant filed a claim with the commission seeking medical benefits only.

At an April 17, 2013 hearing before a deputy commissioner, claimant testified as follows:

> My office is located in the main hospital on the second floor and every Monday it is my responsibility to do the mail for our department, which requires me to walk over through the Gateway building, Nelson Clinic, through a catwalk into Sanger Hall to get the mail – to go to the mail drop on the first floor of Sanger. I went and did that. I was on my way back and on my way back, I opened the door and I tripped through the doorway and fell.

As for why claimant tripped over the threshold, she explained, "My shoe caught on a metal stripping that was in the doorway. It is not even. It's raised." At the hearing, claimant entered into evidence photographs depicting the metal stripping of the threshold. While describing the photographs, claimant explained, "I caught my shoe at the unevenness of where we marked the metal strip," and "there is a little notch right in there that was sort of out of the metal stripping, that is where my left shoe caught and tore it." Claimant also entered into evidence a photograph of her torn shoe.

On January 8, 2014, a divided commission issued a review opinion reversing the deputy commissioner's finding that the evidence failed to prove that the metal stripping was defective. The commission found "that the claimant was exposed to a heightened risk of injury because the metal stripping which comprised the threshold at this particular doorway was defective." Furthermore, the commission found "that the photographs, along with the claimant's credible testimony, are sufficient to show that the defect on the right side of the metal stripping caused her fall and subsequent injuries, and her injury therefore arose out of her employment."

In arriving at its conclusion that a defect in the metal stripping caused claimant to fall, the commission cited the following portion of the transcript from claimant's hearing:

[Claimant:]  My office is located in the main hospital on the second floor and every Monday it is my responsibility to do the mail for our department, which requires me to walk over through the Gateway building, Nelson Clinic, through a catwalk into Sanger Hall to get the mail – to go to the mail drop on the first floor of Sanger.  I went and did that.  I was on my way back and on my way back, I opened the door and I tripped through the doorway and fell.

[Counsel:]  Why did you trip?

[Claimant:]  My shoe caught on a metal stripping that was in the doorway.  It is not even.  It's raised.

When asked to review Claimant's Exhibit 2A – a photograph of the metal stripping – the following exchange took place between claimant and her counsel:

[Claimant:]  I caught my shoe at the unevenness of where we marked the metal strip.

[Counsel:]  Can you, on this exhibit 2A, indicate where your right foot struck the metal strip?

[Claimant:]  Approximately right in there.

[Counsel:]  Did your left foot also strike the metal strip?

[Claimant:]  Probably a little closer in, yes, somewhere in this area in there.

[Counsel:]  Put "L" and "R" in the circles please.  Okay.  Now, can you describe the fall for us?

[Claimant:]  When my shoe caught, when my shoes caught, instantly it catapulted me forward—I mean it was an—It was an instant—I mean it was a flash and I was down on the ground.  I mean it happened in a split second is basically what it felt like.

 [Counsel:]  I want to turn the page.  This is more of a close up photograph.  Does that accurately reflect the way that the metal stripping connected to the doorway and threshold at the time of your accident?

[Claimant:]  That is correct.

[Counsel:]  Okay.  And can you—Is it your testimony that there is a raise in this metal stripping?

- 3 -

[Claimant:] That is correct.

[Counsel:] Can you circle the area of the raise?

[Claimant:] It is all across here.

[Counsel:] Okay.

[Claimant:] And there is a little notch right in there that was sort of out of the metal stripping, that is where my left shoe caught and tore it.

The commission pointed to the fact that claimant attributed her fall to the "unevenness of the metal strip." In addition, the commission observed that one of the pictures depicted a metal stripping that, on the right side, was raised compared to the rest of the metal stripping.

## II. ANALYSIS

On appeal, employer argues that claimant failed to satisfy her burden of proof that her injuries arose out of her employment, as required by the Workers' Compensation Act. See Code § 65.2-101 (providing that compensable injuries must be "by accident arising out of and in the course of the employment"); see also Marketing Profiles v. Hill, 17 Va. App. 431, 433, 437 S.E.2d 727, 729 (1993) (*en banc*) (noting that the claimant must prove compensability by a preponderance of the evidence). Whether an injury arises out of the employment presents a mixed question of law and fact. City of Waynesboro v. Griffin, 51 Va. App. 308, 312, 657 S.E.2d 782, 784 (2008).

"The mere fact that an employee was injured at work is not enough to show that his injury arose out of his employment." Id. at 313, 657 S.E.2d at 784; see County of Chesterfield v. Johnson, 237 Va. 180, 185, 376 S.E.2d 73, 76 (1989). Thus, for an injury to be compensable, a claimant must establish "a causal connection between the claimant's injury and the conditions under which the employer requires the work to be performed." R.T. Investments v. Johns, 228 Va. 249, 252, 321 S.E.2d 287, 289 (1984). Causation is a question of fact. See Bass v. City of

Richmond Police Dep't, 258 Va. 103, 114-15, 515 S.E.2d 557, 563 (1999); Ivey v. Jerry P. Puckett Constr. Co., 230 Va. 486, 488, 338 S.E.2d 640, 641 (1986); see also Farmington Country Club v. Marshall, 47 Va. App. 15, 26, 622 S.E.2 233, 239 (2005).

On appeal, this Court reviews the facts in the light most favorable to Booth, as she is the party who prevailed in the commission. Apple Constr. Corp. v. Sexton, 44 Va. App. 458, 460, 605 S.E.2d 351, 352 (2004). "[W]e must defer to the commission's findings of fact if supported by credible evidence in the record." Diaz v. Wilderness Resort Ass'n, 56 Va. App. 104, 114, 691 S.E.2d 517, 522 (2010); see Code § 65.2-706. "'In determining whether credible evidence exists, the appellate court does not retry the facts, reweigh the preponderance of the evidence, or make its own determination of the credibility of the witnesses.'" Pruden v. Plasser Am. Corp., 45 Va. App. 566, 574-75, 612 S.E.2d 738, 742 (2005) (quoting Wagner Enters. v. Brooks, 12 Va. App. 890, 894, 407 S.E.2d 32, 35 (1991)).

The Virginia appellate courts apply "the 'actual risk' test" to determine if an injury arises out of employment. Simms v. Ruby Tuesday, Inc., 281 Va. 114, 122, 704 S.E.2d 359, 363 (2011). "Under the actual risk test, an 'injury comes within the Act only if there is a causal connection between the employee's injury and the conditions under which the employer requires the work to be done.'" Id. (quoting Hilton v. Martin, 275 Va. 176, 180, 654 S.E.2d 572, 574 (2008)). Thus, "[i]n considering the 'arising out of' prong" of Code § 65.2-101, Virginia appellate courts "do not apply the 'positional risk' test, whereby simply sustaining an injury at work is sufficient to establish compensability." Hilton, 275 Va. at 180, 654 S.E.2d at 574.

> "Under [the 'actual risk'] test, if the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises 'out of' the employment. But [the applicable test] excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause and which

- 5 -

> comes from a hazard to which the workmen would have been equally exposed apart from the employment. The causative danger must be peculiar to the work and not common to the neighborhood. It must be incidental to the character of the business and not independent of the relation of master and servant. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence."

Simms, 281 Va. at 122-23, 704 S.E.2d at 363 (quoting Bradshaw v. Aronovitch, 170 Va. 329, 335, 196 S.E. 684, 686 (1938)).

Viewing the evidence in the light most favorable to Booth, as we must since she was the prevailing party below, we cannot say that the commission erred in concluding that claimant's July 23, 2012 workplace accident arose out of her employment. First, credible evidence supports the commission's determination that the metal stripping was actually defective. As the Supreme Court has explained, the word "defective" is "defined as 'wanting in something essential: falling below an accepted standard in regularity and soundness of form or structure or in adequacy of function: faulty, deficient, insufficient.' Webster's Int'l Dict. at 591; Oxford Eng. Dict. at 48766 ('Having a defect or defects; wanting some essential part of proper quality; faulty, imperfect, incomplete.')." TravCo Insurance Co. v. Ward, 284 Va. 547, 556, 736 S.E.2d 321, 327 (2012). Claimant testified here that the metal stripping was "not even," but "raised," and that she caught her shoe on the "unevenness" of the metal stripping. In addition, claimant indicated that "there is a little notch right in there that was sort of out of the metal stripping, that is where my left shoe caught and tore it." The photograph exhibits that depict the metal stripping corroborate claimant's testimony as to the unevenness of the metal stripping. Thus, claimant's testimony and the photographs support the commission's finding that the metal stripping was defective within the ordinary meaning of that term. Id. On these facts, therefore, the commission was permitted to find that claimant was exposed to a heightened risk of injury due to the defective metal

- 6 -

stripping. See Simms, 281 Va. at 122-23, 704 S.E.2d at 363 (explaining that for an injury to arise out of employment, "'[t]he causative danger must be peculiar to the work and not common to the neighborhood'" (quoting Bradshaw, 170 Va. at 335, 196 S.E. at 686)).

Second, credible evidence also supports the commission's determination that the defective metal stripping caused claimant's fall and subsequent injuries. See id. at 122, 704 S.E.2d at 363 (explaining that "[u]nder the actual risk test, an injury comes within the Act 'only if there is a causal connection between the employee's injury and the conditions under which the employer requires the work to be done'" (quoting Hilton, 275 Va. at 180, 654 S.E.2d at 574)). In direct response to her counsel's question "Why did you trip," claimant responded, "My shoe caught on a metal stripping that was in the doorway. It is not even. It's raised." Claimant further testified, "I caught my shoe at the unevenness of where we marked the metal strip."

Employer argues that Dominion Virginia Power v. Pulley, Rec. No. 0866-10-1, 2011 Va. App. LEXIS 191 (Va. Ct. App. June 7, 2011), counsels toward reversal of the commission in this case. Employer's reliance on Pulley is misplaced, however, as the result in that unpublished decision is not persuasive on the different circumstances here. The commission in Pulley found that the claimant's injury arose out of her employment since the claimant tripped over a threshold that was raised by five-eighths of an inch. Id. at *4. This Court reversed the commission in Pulley, finding that the commission failed to apply the actual risk test to determine whether the claimant's injury arose out of her employment. Id. at *10. Specifically, the commission in Pulley made no findings of fact as to whether the claimant faced a heightened risk of injury due to her employment, nor did the commission in Pulley make any findings of fact as to whether the threshold in that case was defective. Id. at *10-11. Here, however, the commission *did* apply the actual risk test, and found that the metal stripping was defective and posed a heightened risk of injury to claimant. The commission also found that the defective

- 7 -

metal stripping caused claimant's injuries.[1]  Therefore, whereas the commission's analysis was incomplete in Pulley, the commission's analysis here applies the actual risk test and is supported by credible evidence in the record on appeal.

### III. CONCLUSION

Credible evidence supported the commission's finding that the metal strip was defective and caused claimant's workplace accident and subsequent injuries.  The commission did not err when it determined that claimant's injuries arose out of her employment.  Thus, the commission did not err when it entered an award providing for payment of medical benefits related to the July 23, 2012 workplace accident.  Accordingly, for the foregoing reasons, we affirm the commission's order awarding medical benefits.

Affirmed.

---

[1] Pulley is also factually distinguishable from this case.  In Pulley, there was testimony that the threshold over which the claimant tripped was raised by 5/8 of an inch.  Id. at *3.  However, unlike here, there was no evidence in Pulley that the threshold was uneven at all.