COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judges Humphreys and Russell
Argued at Winchester, Virginia

UNPUBLISHED

MICHAEL EFFLER

v.      Record No. 0380-19-4

MEMORANDUM OPINION* BY
JUDGE WESLEY G. RUSSELL, JR.
SEPTEMBER 3, 2019

CARDINAL LOGISTICS MANAGEMENT
  CORP. AND SEDGWICK CLAIMS MANAGEMENT
  SERVICES, INC.

FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

Casey Duchesne (ChasenBoscolo Injury Lawyers, on brief), for
appellant.

Lindsay L. Blumberg (Kevin W. Cloe; Midkiff, Muncie & Ross,
P.C., on brief), for appellees.

Appellant Michael Effler (claimant) appeals a decision of the Workers' Compensation

Commission denying his claim for benefits. He contends that the Commission erred in denying

his claim for benefits related to an injury he suffered while working for employer.[1] For the

reasons that follow, we affirm the judgment of the Commission.

BACKGROUND

"On appeal from a decision of the Workers' Compensation Commission, the evidence

and all reasonable inferences that may be drawn from that evidence are viewed in the light most

favorable to the party prevailing below." Anderson v. Anderson, 65 Va. App. 354, 361 (2015)

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Cardinal Logistics Management Corporation is insured regarding this claim by
Sedgwick Claims Management Services, Inc. We refer to Cardinal and Sedgwick collectively as
"employer."

(quoting Artis v. Ottenberg's Bakers, Inc., 45 Va. App. 72, 83 (2005)). Accordingly, we review the record in the light most favorable to employer.

Claimant works for employer as a truck driver. Around 3:00 a.m. on March 16, 2017, claimant inspected his truck prior to departing from a Sysco facility in Front Royal. It was windy and "misty" but not raining. Before leaving the facility, he stopped to use the restroom. Upon exiting the restroom, he fell, injuring his left knee. He was transported to the hospital and ultimately had knee surgery a few days later. Since the accident, claimant has experienced several episodes of his knee "giving way."

Claimant filed his claim for benefits with the Commission on September 5, 2017. He alleged that he injured his left knee, left hip, and back when he "exit[ed a] building, tripped on [a] mat, [and] fell and broke [his] left knee cap." He requested wage loss benefits for missing work completely from March 17 to May 11, 2017, and for continuing to work fewer hours starting May 12, 2017, because of resulting physical therapy appointments; he also sought medical benefits. Employer made voluntary payments to claimant, but ultimately defended the claim; employer asserted that no injury arose out of claimant's employment and there was no causal connection between the fall and any injury to claimant's hip or back. Prior to the hearing, the parties stipulated to claimant's average weekly wage and to the period of disability for a potential award.

In the proceedings below, a dispute arose over what caused claimant's fall. In describing the incident at the hearing before the deputy commissioner, claimant, as he had in his written claim for benefits, asserted that he had tripped over a rubber mat. Specifically, he testified that upon exiting the building,

> I looked up to see where the handrail was because it was a
> galvanized porch step[s] which is usually very slick. I headed
> towards the first step and there was a door runner, a rubber door
> runner, laying there and the wind had blown it up into a ball. I

tripped over it with my right foot landing on the top edge of the landing.

Claimant described the mat as "made of a rubber base with a carpet top." During cross-examination, he acknowledged that he did not inspect the mat at the time of the incident to determine if it had any defects and that he did "not know if it was like that [i.e., balled up] before I fell."

Also introduced at the hearing was claimant's deposition testimony from his June 27, 2018 deposition. At that time, claimant stated that when

> I came out of the building, the wind was blowing and I wasn't sure about the icy situation, I looked up for the handrail, tripped over a rubber mat that was on the porch there, I guess you would say, fell on my left knee on the front edge of the top step there. It's about a piece of -- about an inch-and-a-half to two-inch steel edging that goes on the top of the edge of the step, when I went down I felt a pop and excruciating pain.

During the deposition, claimant acknowledged that he did not notice the mat when he entered the bathroom, did not know the condition of the mat when he fell, and did not know whether his tripping caused the mat to become balled up.

In addressing compensability, the deputy commissioner noted the discrepancies in claimant's accounts of the accident. Although, at times, claimant indicated he was certain that the mat was balled up when he fell, the deputy commissioner noted that, at other times, claimant conceded that he did not know whether the mat was balled up prior to his fall.

The deputy commissioner "f[ou]nd it significant that the claimant testified that he did not know the condition of the mat when he entered the building." Noting that the claimant attributed his fall only to the mat as opposed to other environmental conditions (lighting, weather, etc.), the deputy commissioner concluded that such conditions were not a cause of the fall. Finding that "the claimant failed to establish, by a preponderance of the evidence, that a condition of his

employment caused his fall," the deputy commissioner denied the claim. Claimant then sought full Commission review.

The full Commission unanimously agreed with the decision of the deputy commissioner with respect to compensability. The Commission explained that, based on the evidence, it could not "reasonably infer" that the mat was balled up prior to the accident, and thus, the Commission concluded that claimant failed to prove that a balled up mat "caused the claimant to trip and fall." As a result, the Commission found that claimant failed to prove that his injury arose out of his employment as opposed to arising from a risk of the neighborhood and denied the claim.

Claimant appeals that judgment. He argues that the Commission erred in concluding "that he did not meet the burden of demonstrating a compensable injury by accident."[2] As he specified at oral argument in this Court, he contends that he is entitled to benefits because the evidence establishes that he suffered an injury while in the service of his employer.

ANALYSIS

I. Standard of Review

Decisions of the Commission "shall be conclusive and binding as to all questions of fact." Code § 65.2-706. Virginia's appellate courts "do not retry the facts before the Commission nor do we review the weight, preponderance of the evidence, or the credibility of witnesses." Jeffreys v. Uninsured Emp'r's Fund, 297 Va. 82, 87 (2019) (quoting Caskey v. Dan River Mills, Inc., 225 Va. 405, 411 (1983)). Thus, factual determinations made by the

---

[2] In his sole assignment of error, claimant also asserts that the Commission erred in concluding "that no *de facto* award existed[.]" However, he made no argument regarding this issue in his brief, and thus, cited no authority to support such an argument. This effectively abandoned any argument he may have had regarding a potential *de facto* award. See Buchanan v. Buchanan, 14 Va. App. 53, 56 (1992) ("Statements unsupported by argument, authority, or citations to the record do not merit appellate consideration."); Rule 5A:20. At oral argument in this Court, appellant, by counsel, confirmed that he was no longer pursuing the *de facto* award argument and indicated that the absence of any argument in the brief was intentional.

Commission will be disturbed on appeal only if "plainly wrong or [they lack] credible evidence to support them." Turner Gilbane JV v. Guzman, 59 Va. App. 128, 133 (2011) (quoting Georgia Pac. Corp. v. Dancy, 17 Va. App. 128, 135 (1993)). To the extent that an appeal requires us to determine whether a particular accident and resultant injury arose from a claimant's employment, it presents "a mixed question of law and fact, which we review *de novo* on appeal." Snyder v. City of Richmond Police Dep't, 62 Va. App. 405, 411 (2013) (quoting Blaustein v. Mitre Corp., 36 Va. App. 344, 348 (2001)). In conducting such review, however, we remain "bound by the [C]ommission's underlying factual findings if those findings are supported by credible evidence[.]" Id. (quoting Stillwell v. Lewis Tree Serv., 47 Va. App. 471, 477 (2006)).

## II. Compensability

"An injury comes within the scope of the Act if it results from an accident arising out of and in the course of the injured employee's employment." Simms v. Ruby Tuesday, Inc., 281 Va. 114, 120 (2011); see also Code § 65.2-101 (defining "injury"). To be entitled to compensation, a claimant bears "the burden of establishing, by a preponderance of the evidence, and not merely by conjecture or speculation, that []he suffered an injury by accident which arose out of and in the course of the employment." Cent. State Hosp. v. Wiggers, 230 Va. 157, 159 (1985). There is no dispute here that claimant suffered an injury during the course of his employment; the question before the Commission was whether the evidence established that the accident and resulting injury arose from claimant's employment.[3]

---

[3] The concepts of an injury "in the course of" and "arising out of" a claimant's employment are distinct. Bernard v. Carlson Companies-TGIF, 60 Va. App. 400, 405 (2012). "The words 'arising out of,' as used in the Act, refer to the origin or cause of the injury while the phrase 'in the course of' pertains to the time, place and circumstances under which the accident occurred." Clifton v. Clifton Cable Contracting, L.L.C., 54 Va. App. 532, 539 (2009) (internal quotation marks and citation omitted) (quoting Grand Union Co. v. Bynum, 226 Va. 140, 143 (1983)).

To establish that an injury arose from his employment, a claimant must prove that the injury resulted from an actual risk of his employment. Taylor v. Mobil Corp., 248 Va. 101, 107 (1994). Actual risks are conditions that are "peculiar to the work and not common to the neighborhood." Liberty Mut. Ins. Corp. v. Herndon, 59 Va. App. 544, 557 (2012) (quoting Simms, 281 Va. at 123). A risk is common to the neighborhood if it is "a hazard to which the employee would have been equally exposed apart from the employment." United Parcel Serv. of Am. v. Fetterman, 230 Va. 257, 258 (1985).

Any number of ordinary, daily activities that occur both in and out of the workplace qualify as risks of the neighborhood. Southside Va. Training Ctr./Commonwealth v. Ellis, 33 Va. App. 824, 829 (2000). Among other things, we have recognized that "[s]imple acts of *walking*, bending, or turning, without any other contributing environmental factors, are not risks of employment." Id. (emphasis added). Thus, injuries caused by falls on ordinary, nondefective surfaces, such as normal stairs, see Bernard v. Carlson Companies-TGIF, 60 Va. App. 400, 407 (2012), flat floors without a slippery substance, Wiggers, 230 Va. at 159, or ordinary carpets and rugs, Kelley v. Monticello Area Cmty. Action Agency, No. 1083-16-3 (Va. Ct. App. Dec. 13, 2016), do not arise from the employment. Rather, such occurrences are simply risks of the neighborhood.[4]

Based on his filings and his testimony in the proceeding below, claimant asserted one and only one potential cause of his fall: his tripping on the carpeted rubber mat as he exited the

---

[4] At oral argument in this Court, claimant's counsel conceded that, "as the case law is presently," if the fall occurred while the mat was lying flat, it was the result of a risk of the neighborhood and did not arise from the employment. Although a party's concession of law is not binding on this Court, Hodges v. Commonwealth, 64 Va. App. 687, 699 n.8 (2015), we appreciate counsel's candor.

building.[5]  Similarly, he posited only one potential "defect" in the mat—that it was balled up.  Although candidly admitting that he was unaware of the condition of the mat prior to his fall, claimant surmised that it must have been balled up before his fall.  From this conjecture, he argued that the balled up condition of the mat must have caused his fall.

The Commission rejected claimant's surmise and conjecture.  Although it did not make a definite finding regarding the mat's condition prior to claimant's fall, the Commission essentially concluded that the evidence was, at best, indeterminate as to the state of the mat before the fall.[6]  As a result, the Commission found that "[t]he evidence in the record is insufficient to show, by a preponderance of the evidence, a condition or risk of the claimant's employment caused his fall[.]"  In short, the Commission concluded that claimant had not established what had caused him to fall, and thus, had failed to carry his burden of proof.

The Commission's decision was entirely consistent with binding authority from our Supreme Court.  In Wiggers, the employee was injured while walking in her employer's place of business.  Wiggers, 230 Va. at 158.  She did not identify any specific defect in the floor over which she walked, but "surmised that the floor might have been slippery from some unknown cause[.]"  Id.  The Supreme Court reversed the Commission's award of benefits, concluding that the employee's surmise was insufficient "to establish a causal connection between the claimant's

---

[5] On appeal, claimant asserts that the deputy commissioner and then the full Commission ignored other factors that might have supported his claim.  He notes that the fall occurred in the early morning hours, the lighting might have been bad, and it was misting, creating the possibility of slippery surfaces.  However, claimant did not allege in his testimony below that any of these factors contributed to his fall.  To the contrary, he made clear there was but one cause of the fall—he tripped on the mat.  It simply is not reversible error for the Commission to credit his testimony in this regard.  Furthermore, claimant's counsel conceded at oral argument in this Court that, before the Commission, claimant attributed his fall only to the mat and not to any other factors.

[6] Claimant's counsel conceded at oral argument in this Court there was nothing in the evidence "that required" the Commission to conclude that the carpeted mat was rolled up prior to claimant's fall.

work environment and her injury[.]" Id. at 159. We perceive no meaningful difference between the Commission's rejection of claimant's surmise in the instant case and the Supreme Court's rejection of Wiggers' surmise and conjecture.

Interestingly, claimant does not perceive or argue a difference between his case and Wiggers or other cases that lead to the conclusion that he properly was denied benefits. At oral argument in this Court, his counsel forthrightly conceded that binding Virginia case law from both this Court and the Supreme Court dictated that he be denied benefits.[7] Rather, citing the "humanitarian purpose" of the Workers' Compensation Act ("Act"), claimant requests that we "change the law" and order that he be awarded benefits. Specifically, he argues that a claimant should not be required to prove that the cause of his injury arose from a risk of his employment; rather, he argues that an employee should be entitled to compensation if he is injured while in the service of his employer regardless of the actual cause of the accident or injury.[8]

Claimant's request that we "change the law" has two components. First, it requires that we ignore or somehow overturn the prior published decisions of this Court and our Supreme Court that claimant readily concedes are against him. Second, he seeks to have us ignore the text of the Act, which expressly requires that "injury . . . means only injury by accident *arising out of and in the course of the employment*[.]" Code § 65.2-101 (emphasis added). We cannot grant either component of claimant's request.

---

[7] At oral argument in this Court, counsel stated that she was "not going to stand before you today and tell you case law is on my side because, to be frank with you, it's not."

[8] In support of this argument, claimant's counsel referenced other jurisdictions that have adopted the positional, as opposed to actual, risk test. The positional risk test "asks only if the injury occurred during the course of employment." Bernard, 60 Va. App. at 405. As the Virginia Supreme Court has made clear, the General Assembly did not adopt "the positional risk test used in other jurisdictions where simply being injured at work is sufficient to establish compensability." Cty. of Chesterfield v. Johnson, 237 Va. 180, 185 (1989).

We lack the authority to grant appellant's request that we ignore binding precedent. Regarding the prior, published decisions of this Court that claimant acknowledges reject his position, the interpanel accord doctrine prevents us from overruling or revisiting those decisions. See Vay v. Commonwealth, 67 Va. App. 236, 257 (2017). Similarly, we are without authority to overrule the decisions of the Supreme Court that claimant acknowledges are adverse to his position. Id. at 258 n.6.

Even if we had the ability to revisit the precedent adverse to claimant's position, we still would reject his request because it runs contrary to the express language of the Act. The General Assembly chose to require that a claimant prove that his injury arose from a risk of his employment to be entitled to benefits. It is not our place to reverse that policy decision. PYA/Monarch & Reliance Ins. Co. v. Harris, 22 Va. App. 215, 223-24 (1996) (noting that a decision to stop using the actual risk test in favor of the positional risk test belongs to the General Assembly).

Claimant's plea that we ignore these obstacles to granting him the relief he seeks because of the Act's humanitarian purpose is unavailing. Although we previously have recognized that the Act should be liberally construed because of its humanitarian and beneficent purpose, we have not and could not stretch that principle to effectively rewrite the text of the Act. As our Supreme Court recently explained,

> [r]ightly applied, the liberal-construction principle means only that an interpretation of the Workers' Compensation Act should take into account the humane, beneficent purposes embedded in the legislative quid pro quo. That interpretative preset does not permit a liberal construction to change the meaning of the statutory language or the purpose of the Act or authorize the amendment, alteration, or extension of its provisions. Nor does the principle go to the extent of requiring that every claim asserted should be allowed or permit the Act to be converted into a form of health insurance. Instead, the Act should be liberally interpreted *consistent with its text* and its underlying quid-pro-quo purpose to benefit all workers.

Jeffreys, 297 Va. at 94 (internal quotation marks, citations, and footnotes omitted) (emphasis added).

The decision of the Commission in this case was consistent with the evidence, binding precedent from this Court and the Supreme Court, and the text of the Act. Accordingly, the Commission did not err in rejecting the claim for benefits.

CONCLUSION

For the foregoing reasons, we affirm the judgment of the Commission.

Affirmed.