# Richmond

A. WILSON AND COMPANY, ET AL. V. COSSIE SHAW MATHEWS.

March 10, 1938.

Present, All the Justices.

The opinion states the case.

*W. E. Kyle* and *Venable, Miller, Pilcher & Parsons,* for the appellant.

No appearance for the appellee.

BROWNING, J., delivered the opinion of the court.

This case was before the Industrial Commission of Virginia three times. In the beginning an agreement was had between the employer and the employee as to compensation growing out of injuries sustained in an accident which happened in November, 1935.

Upon the application of the Liberty Mutual Insurance Co., the insurance carrier, for a hearing on the ground of a change in the condition of the claimant, under section 47 of the Workmen's Compensation Act (Acts 1918, ch. 400, as amended by Acts 1932, ch. 88), the Hearing Commissioner made an award which provided for compensation up to August, 1936, in accordance with the agreement, which was deemed a final settlement and the claim was closed.

In his finding of fact the Commissioner was critical of the testimony to the extent of pronouncing it inadequate to support the claimant's contention. He added, however, that a very pronounced psychic element was present, the claimant being under the impression that he was suffering from various ailments, which had not been recognized by some of the examining physicians.

One of these physicians was Dr. Thomas Wheeldon, of Richmond, Virginia, who appears to have made a very careful and informative report. He stated that the claimant, when he was examined by him in May, 1936, was "emotionally very unstable"; that he reiterated that his nerves were all gone and the witness added, "There is a greater side to this case than would appear on the surface." This we regard as very significant in our review. The doctor went further in a statement that the patient had evidently a "lowback strain," and he shuddered at sug-

gesting this fact to him for fear of its moral effect upon him, meaning, of course, that the effect would be deleterious.

The second time the case came before the Commission was upon the application of the employee for a modification of the award on account of a change in his condition. The Hearing Commissioner on this occasion, which was in April, 1937, was Commissioner Nickels.

The testimony which was had at the first hearing was before the Commissioner and additional testimony was taken, which resulted in a finding of fact by the Commissioner to the effect that there had been no change in the physical condition of the claimant which would be sufficient to justify a modification of the previous award under section 47 of the Workmen's Compensation Act, but that the case "must necessarily be treated from the standpoint of psychoneurosis"; that on the whole record and upon a careful analysis of the evidence, that was the apparent cause of the claimant's present disability and an award was made allowing the claimant compensation on the basis of a fifty per centum disability. This was tantamount to saying that while there had been no change physically in the applicant's condition, there had been a change in his mental condition in that it had progressed from what Dr. Wheeldon had said was emotional instability to the definite ailment of psychoneurosis.

A review before the full Commission was then sought by the employer and the insurer with the result that the previous award was ratified and confirmed.

At the second hearing the testimony of Dr. James T. Tucker, an eminent orthopedic specialist of Richmond, Virginia, showed that he treated the claimant in the latter part of the year 1936 and that he found, upon examination of his back, that he had definite signs of a right sacroiliac strain and that he was unable to work at that time and had not since then been able to work. His testimony is quite clear as to the fact that the claimant had objective signs of injury and suffering rather than ailments which were purely and entirely subjective. This he

illustrated by describing the effect of pressure over both sacroiliac joints, which, he stated, resulted in objective signs.

On this hearing Dr. Howe, who was the original physician of the claimant, was asked this question:

"Q. As result of your examination last Thursday, do you now say to this Commissioner that this man was able to work or not able to work?"

And his reply was: "From physical findings I myself could make, I should say he was able to work; from the way he acted, he needed an attendant to get him home."

It will be remembered that this witness testified upon the first hearing that he discharged his patient from the hospital because he had improved and was ready to be sent home.

That upon his second examination the patient appeared to need an attendant to take him home is important as revealing the progressive nature of the disease from which he was suffering being tantamount, we think, to a changed condition. The original condition complained of by the complainant, according to the evidence elicited at the first hearing, was subjective. The evidence developed at the second hearing justified the conclusion that it had become objective. A fair estimate of all of the evidence is that the mental disease from which he was suffering was fairly and naturally traceable to the accident which he sustained.

At first blush, or upon casual thought, the conclusions of the Commission might suggest that it had arbitrarily gone into a realm of occult medical theory to find an ailment to fit the symptomatic conditions which obtained, but, we think, this is not so. The evidence as a whole, analyzed and weighed, justifies and warrants the finding of fact and conclusions of law reached by the Commission.

Of course, it will always be kept in mind that the statute (Acts 1918, ch. 400, sec. 1 *et seq.*, as amended), was enacted for the beneficent purpose of attaining a humanitarian end which had, hitherto, been frustrated by the inexorable rules of the common law.

See *Humphrees* v. *Boxley Brothers Company*, 146 Va. 91, 135 S. E. 890, 49 A. L. R. 1427; *Chesapeake & O. Ry. Co.*

v. *Palmer,* 149 Va. 560, 140 S. E. 831; *Mann* v. *Lynchburg,* 129 Va. 453, 106 S. E. 371.

This court has so frequently said that the Statute must be construed liberally in favor of those seeking its aegis that we have no hesitancy in affirming the action of the Commission.

*Affirmed.*

SPRATLEY, J., concurs in result.