CITY OF FAIRFAX

v.

WILLIAM R. MASSEY

No. 0981-89-4

WILLIAM R. MASSEY

v.

CITY OF FAIRFAX

No. 1033-89-4

Decided October 30, 1990

239

COUNSEL

Daniel E. Lynch (William B. Pierce, Jr. and Williams, Butler, and Pierce, on brief), for City of Fairfax.

Peter M. Sweeny, for William R. Massey.

OPINION

**BARROW, J.**—In these two appeals from the Industrial Commission, both the employer and the employee question the method of applying the "dissimilar employment rule" in two awards by the commission.[1] The "dissimilar employment rule," an interpretive rule adopted by the commission, excludes wages earned in concurrent dissimilar employment from an employee's "average weekly

---

[1] The "dissimilar employment rule" is not challenged by either party to this appeal. *See Hudson v. Arthur Treachers*, 2 Va. App. 323, 326, 343 S.E.2d 97, 99 (1986); *contra* 2 A. Larson, *The Law of Workmen's Compensation* § 60.31(c) (1987).

wages" under Code § 65.1-6. *See Hudson v. Arthur Treachers*, 2 Va. App. 323, 326, 343 S.E.2d 97, 99 (1986). We conclude that the commission did not err in using the "dissimilar employment rule" to determine the employee's "average weekly wages." Since the application of the "dissimilar employment rule" did not, in fact, affect the amount of compensation the employee received, we do not decide whether its use under these facts was unwarranted.

The employee, a firefighter, was injured while working for the City of Fairfax and received an award for temporary total disability. The award was based on an average weekly wage which was determined from his wages from the City of Fairfax and, because of the "dissimilar employment rule," did not include any consideration for the wages he earned for part-time work with a private company. This part-time work began approximately six months prior to the accident and consisted of performing repairs to light equipment. He earned $7.50 per hour and worked as many as 32 hours per week, depending upon his schedule, as a firefighter with the City of Fairfax. Since the amount of compensation to which the employee was entitled based upon his wages from the City of Fairfax exceeded the maximum compensation rate, he received the maximum rate of $326.

After his accident, he was unable to work for the City of Fairfax and was also unable to continue his part-time work. However, approximately one year after his accident, he was able to return to work with the same private employer but not as a mechanic. Instead, he was offered and accepted a position as a service manager at $9.00 per hour.

The commission found that since he was no longer working for the City of Fairfax, he was able to increase his employment hours at his part-time job with the private employer. Consequently, the commission concluded that the employer was entitled to a credit for the employee's increase in earnings as a result of the extra hours he was able to work at his part-time employment but was not entitled to a credit for the remainder of his earnings from the dissimilar employment.

Thus, the commission modified the "dissimilar employment rule," recognized that the employer was entitled to a credit under Code § 65.1-100.3 "for the overage," and awarded the employee compensation for partial disability under Code § 65.1-55. Since the amount to which the employee was entitled for partial inca-

pacity exceeded the maximum compensation rate, the employee's award again was $326. The employer contends that the "dissimilar employment rule" should not have been used at all, while the employee contends that the commission was correct in using the rule but should not have modified it to include the increased earnings from his dissimilar employment in his average weekly wage.

## EMPLOYER'S APPEAL

Since the "dissimilar employment rule" is an interpretive rule used by the commission to further define the meaning of "average weekly wages" as initially defined by Code § 65.1-6, it should be uniformly employed for this purpose in the Workers' Compensation Act. It would be unfair to use it to define an employee's "average weekly wages" where it benefited the employer but to decline to use it where it benefited the employee.

An employee's average weekly wages are twice used in calculating an award for partial incapacity. Compensation for partial incapacity is a sum equal to two-thirds "of the difference between . . . [an employee's] average weekly wages before the injury and the average weekly wages which he is able to earn thereafter." Code § 65.1-55. An employee's "average weekly wages," both before the injury and after the injury must, therefore, be determined to calculate an award of compensation for partial incapacity.

"Average weekly wages," whether they are those earned "before the injury" or those "which he is able to earn thereafter" have a common definition. Code § 65.1-6. They consist of "the earnings of the injured employee *in the employment in which he was working at the time of the injury*." *Id.* (emphasis added). It is this language which, according to the commission's interpretation, excludes earnings from "dissimilar employment." *See Hudson*, 2 Va. App. at 326, 343 S.E.2d at 99. The "dissimilar employment rule" is, therefore, equally applicable in defining an employee's "average weekly wages" which he is able to earn after an injury as it is in defining his "average weekly wages" before the injury.[2] The commission, therefore, was correct in using the "dissimilar employment rule" to determine the award for partial

[2] Before an injury, the "average weekly wages" to be determined are those actually earned; after the injury they are those which an employee is "able to earn thereafter." We

incapacity.

## EMPLOYEE'S APPEAL

We need not address the application of the "dissimilar employment rule" as raised in the employee's appeal of his award. The employee complains that the commission erred in considering the increase in his earnings from dissimilar employment in determining his compensation benefits. Consideration of the increase in the employee's earnings did not, however, reduce the amount of compensation for partial incapacity awarded to the employee. The commission's award to the employee for partial incapacity, even after considering the increase in earnings, was at the maximum compensation rate. As a result, the employee received exactly the same amount he received under his award for total incapacity. Thus, the application of the "dissimilar employment rule" did not result in a reduction in the amount of compensation the employee received for partial incapacity.

Furthermore, the language in the commission's opinion recognizing the employer's right to a credit does not require us to address the employee's appeal. Code § 65.1-100.3 allows the commission to award an employer a credit against future compensation for any payment "procured by the employee by . . . failure to report any return to employment or increase in earnings." Code § 65.1-100.3. An award under this statute, therefore, is limited to the amount the employee receives in excess of that which he or she should have received had he or she reported the return to employment or the increase in earnings.

In this case, had the employee reported his return to employment he would have been entitled only to an award for partial incapacity rather than total incapacity. The employer would, therefore, have been entitled to a credit had there been a difference between the award the employee was receiving for total incapacity and that which he should have been receiving for partial incapacity. However, since the employee was entitled to receive the maximum compensation rate of $326 for both the award for total incapacity and the award for partial incapacity, no credit was due the employer.

need not address this difference, although perhaps significant in some instances, since the employee's appeal is moot.

Although the commission's opinion recognized the employer's entitlement to a credit for an "overage," it did not determine the amount of the overage nor did it make an award for one. Presumably the commission recognized that, since there was no difference between the award for partial incapacity and the award for total incapacity, there was no basis for an actual credit. For these reasons, the commission's award to the employee for partial incapacity is affirmed.

*Affirmed.*

Cole, J., and Keenan, J., concurred.