COURT OF APPEALS OF VIRGINIA

Present:  Judges Alston, McCullough and Huff
Argued at Alexandria, Virginia

STEPHEN A. BARTON

                                                              MEMORANDUM OPINION[*] BY
v.        Record No. 2215-12-4                   JUDGE ROSSIE D. ALSTON, JR.
                                                              JULY 23, 2013

ALLIED WASTE INDUSTRIES, INC./
 REPUBLIC SERVICES OF VIRGINIA, LLC AND
 ZURICH AMERICAN INSURANCE COMPANY

                FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

                Craig A. Brown (Ashcraft & Gerel, LLP, on brief), for appellant.

                Stephanie S. Ryan (Ryan Law PLLC, on brief), for appellees.


        Stephen A. Barton (claimant) appeals the decision of the Virginia Workers' Compensation

Commission (commission) denying claimant disability benefits because Allied Waste Industries,

Inc. (employer) terminated claimant from his employment for justified cause.  On appeal, claimant

raises five assignments of error, all arguing that the commission erred in holding that Code

§ 65.2-510 and the firing for cause doctrine applied in the instant case or that the commission erred

in finding that claimant was terminated from his employment for justified cause.[1]  For the following

reasons, we affirm the decision of the commission.

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

        [1] Claimant's five assignments of error are:  (1) the commission erred in finding that the
evidence in the record supports the finding that claimant was fired for dishonesty constituting
justified cause for termination resulting in a permanent forfeiture of benefits; (2) the commission
erred in finding that claimant's failure to notify the insurance carrier of his return to work with
his pre-injury employer as required by Code § 65.2-712 constitutes grounds for imposing a
permanent bar to the receipt of future compensation benefits under the firing for cause doctrine;
(3) the commission erred in ignoring the unambiguous language of Code § 65.2-712 and grafting
onto that statute an additional sanction which the General Assembly has never seen fit to do;

## I. Background[2]

"On appeal from a decision of the Workers' Compensation Commission, the evidence and all reasonable inferences that may be drawn from that evidence are viewed in the light most favorable to the party prevailing below." Artis v. Ottenberg's Bakers, Inc., 45 Va. App. 72, 83, 608 S.E.2d 512, 517 (2005) (*en banc*).

So viewed, the evidence showed that claimant injured his left shoulder, elbow, and wrist in an accident arising out of his employment as a commercial truck driver on January 16, 2009. On May 19, 2009, claimant had surgery on his shoulder and his doctor instructed him to refrain from all work activity. Subsequently, claimant received temporary total disability payments from employer's insurance carrier.[3]

Claimant returned to light-duty work with employer and began receiving light-duty pay on July 1, 2009. Claimant also continued to receive temporary total disability benefits after returning to work. Claimant did not notify employer's insurer that he had returned to work, and claimant did not notify employer that he was receiving both temporary total disability benefits and light-duty pay. However, claimant did inform employer about other issues with his benefits, such as whether he was receiving the correct physical therapy.

In September 2009, employer discovered that claimant was receiving both light-duty pay and temporary total disability benefits. Employer calculated that claimant was being paid 50%

---

(4) the commission erred in applying Code § 65.2-510 to the facts of this case; and (5) the commission erred in liberally construing the Virginia Workers' Compensation Act in favor of employer.

[2] As the parties are fully conversant with the record in this case and because this memorandum opinion carries no precedential value, this opinion recites only those facts and incidents of the proceedings as are necessary to the parties' understanding of the disposition of this appeal.

[3] Initially, claimant's claim was administered by Zurich American Insurance Company. At some point not identified in the record, CCMSI, a "third party administrator" began administering claimant's claim.

more than he had been paid before his injury. In early September, claimant stopped receiving temporary total disability benefits. On September 21, 2009, two of employer's managers, Gordon Duke and Max Johns, met with claimant to discuss the overpayments. During the meeting, claimant was unable to explain why he believed he was receiving both indemnity payments and his light-duty pay. Johns asked claimant whether he was aware that employees should receive either indemnity payments or light-duty pay, but not both. Claimant "acknowledged that an employee doesn't receive both." From this meeting, Johns concluded that claimant "realized that he had been getting paid more than he should have." At the conclusion of the meeting, employer terminated claimant's employment for dishonesty.

The next day, Johns wrote claimant a letter confirming his termination. The letter did not state the reason for claimant's termination.

On September 25, 2009, claimant filed a claim for benefits and application for hearing before the commission. The deputy commissioner held a hearing on August 3, 2011. Claimant testified before the deputy commissioner and admitted several times that he knew he was being overpaid from July 2009 to September 2009. Claimant acknowledged that instead of receiving his usual pay of $1,100, he was paid between $1,700 and $1,900 per week. Claimant claimed that he believed the extra pay was payment for the difference in pay between his light-duty pay and regular pay. However, he also acknowledged that he knew he was being paid more money during this period than he received when he was working his regular, full-duty job.

Claimant admitted that he never raised the discrepancy in his pay with employer and that he did not report to employer or any of his supervisors that he stopped receiving temporary total disability payments in early September 2009. Claimant suggested that he was confused about which insurer was responsible for his claim, because employer's insurer changed during the pendency of his claim. However, he also admitted that the reason he kept the money was not

because he did not know who to contact to return the money. In response to a question from the deputy commissioner, claimant acknowledged that he "knew if [he] called the carrier, the overpayment would stop." Claimant never repaid the money he had been overpaid to employer, despite employer's request that he do so.

Claimant also admitted in his testimony that he was familiar with other employees' workers' compensation claims as part of his past employment. Claimant acknowledged that he was familiar with workers' compensation laws but denied knowing as a result of this familiarity that "employees don't get light-duty pay and Workers' Compensation indemnity payment at the same time."

At the hearing, the deputy commissioner admitted into evidence a copy of a relevant portion of employer's Code of Business Conduct and Ethics. Employer's Code of Business Conduct and Ethics prohibited "[d]ishonesty regarding any aspect of [an employee's] employment or Company business, including misuse of funds or of other Company property." Claimant conceded before the deputy commissioner that he had received a copy of employer's Code of Business Conduct and Ethics and that he knew employer did not permit dishonesty.

Duke and Johns also testified before the deputy commissioner about their September 21, 2009 meeting with claimant. According to Johns, employer initially suspected a "communications lapse" when it learned claimant was being overpaid. Johns stated that many things were happening at once in the workplace, including claimant's return to work and "the transfer [of insurance carriers] from Zurich to CCMSI." In addition, Duke acknowledged during the hearing that he did not know whose job it was to notify the insurance carrier when an injured worker returns to work.

The deputy commissioner denied claimant's request for benefits after September 21, 2009. The deputy commissioner found that claimant was terminated from his employment for justified cause, in this case dishonesty, thereby extinguishing his right to receive temporary partial disability benefits. The deputy commissioner discredited claimant's explanations for failing to report his

overpayment and found that claimant "was fully aware that he was receiving wage loss benefits from the carrier in error." The deputy commissioner further found that claimant "made a conscious decision not to tell [employer or the insurance carrier] of the overpayment" and that employer appropriately terminated claimant's employment because of dishonesty.

Claimant appealed to the commission, which affirmed the decision of the deputy commissioner. The commission found that claimant was fired for dishonesty, a justified cause for termination. It stated,

> [Claimant] knew that he was not entitled to receive temporary total disability compensation while working, and he continued to accept and cash these checks for ten weeks. By failing to report his employment or his extra payments and refusing to repay the money paid to him in error, he demonstrated his deceit.

Applying Code § 65.2-510, the commission held that employer terminated claimant's employment for justified cause, and, as a result, claimant had forfeited his right to compensation benefits. This appeal followed.

## II. Analysis

### A. Standard of Review

On appeal, "we are bound by the commission's findings of fact as long as 'there was credible evidence presented such that a reasonable mind *could* conclude that the fact in issue was proved.'" Artis, 45 Va. App. at 83-84, 608 S.E.2d at 517 (quoting Westmoreland Coal Co. v. Campbell, 7 Va. App. 217, 222, 372 S.E.2d 411, 415 (1988) (emphasis in original)). However, "'[c]onclusions of the Commission upon questions of law, or mixed questions of law and fact, are not binding on [appeal].'" Gallahan v. Free Lance Star Publ'g Co., 41 Va. App. 694, 698, 589 S.E.2d 12, 14 (2003) (quoting Sinclair v. Shelter Constr. Corp., 23 Va. App. 154, 156-57, 474 S.E.2d 856, 857-58 (1996)). "[W]e review questions of law *de novo*." Rusty's Welding Serv., Inc. v. Gibson, 29 Va. App. 119, 127, 510 S.E.2d 255, 259 (1999) (*en banc*).

B.  Applicability of Code § 65.2-510 and the Firing for Cause Doctrine[4]

On appeal, appellant alleges that the commission erred in applying Code § 65.2-510 and the firing for cause doctrine in the instant case.  Claimant argues that Code § 65.2-712 contains the exclusive remedy when an employee receives overpayments because of his failure to disclose a return to work.

Code § 65.2-712 provides that an employee receiving workers' compensation benefits has a duty "immediately to disclose" to the employer or insurer any return to employment.  The statute further provides,

> Any payment to a claimant by an employer or insurer which is later determined by the Commission to have been procured by the employee . . . by fraud, misrepresentation, or failure to report any . . . return to employment . . . may be recovered from the claimant . . . by the employer or insurer either by way of credit against future compensation payments due the claimant . . . or by action at law against the claimant.

Code § 65.2-510(A) provides,

> If an injured employee refuses employment procured for him suitable to his capacity, he shall only be entitled to the benefits provided for in [Code] §§ 65.2-503 and 65.2-603, excluding vocational rehabilitation services provided for in subdivision A 3 of [Code] § 65.2-603, during the continuance of such refusal, unless in the opinion of the Commission such refusal was justified.

Under Code § 65.2-510(A), Virginia courts have developed the so-called "firing for cause" doctrine.

Under the firing for cause doctrine,

> [w]hen the pre-injury employer provides or procures light duty from which the injured worker is subsequently terminated for

---

[4] In this portion of our opinion, we address claimant's third, fourth, and fifth assignments of error:  the commission erred in ignoring the unambiguous language of Code § 65.2-712 and grafting onto that statute an additional sanction which the General Assembly has never seen fit to do; the commission erred in applying Code § 65.2-510 to the facts of this case; and the commission erred in liberally construing the Virginia Workers' Compensation Act in favor of employer.

- 6 -

cause unrelated to the compensable injury, he or she is like any other employee and may not be eligible for temporary partial benefits if the wage loss is attributable to his or her wrong doing.

Lawrence J. Pascal, Virginia Workers Compensation Law and Practice § 6.04 (4th ed. 2011). The justification for this doctrine is that "where a disabled employee is terminated for cause from selective employment procured or offered by his employer, any subsequent wage loss is properly attributable to his wrongful act rather than his disability. The employee is responsible for that loss and not the employer." Chesapeake & Potomac Tel. Co. of Va. v. Murphy, 12 Va. App. 633, 639-40, 406 S.E.2d 190, 193, aff'd en banc, 13 Va. App. 304, 411 S.E.2d 444 (1991).

Under the firing for cause doctrine, an employee discharged for cause "forfeits his or her right to compensation benefits like any other employee who loses employment benefits when discharged for cause." Timbrook v. O'Sullivan Corp., 17 Va. App. 594, 597, 439 S.E.2d 873, 875 (1994). In other words, the employee's compensation benefits can be terminated when and if the firing for cause doctrine applies. Moreover, "[i]f the termination [of employment] is deemed to be for 'justified cause' the worker will not be able to cure and will only be eligible for wage loss benefits if he or she subsequently becomes totally disabled." Pascal, supra, § 6.04.

In determining whether Code § 65.2-510 and the firing for cause doctrine apply in the instant case, we are mindful that "'[t]he Workers' Compensation Act is to be liberally construed for the benefit of employees.'" Gallahan, 41 Va. App. at 698, 589 S.E.2d at 14-15 (quoting Waynesboro Sheriff's Dep't v. Harter, 1 Va. App. 265, 269, 337 S.E.2d 901, 903 (1985)). We recognize that the purpose of the Act is to protect the employee, Ellis v. Commonwealth Dep't of Highways, 182 Va. 293, 303, 28 S.E.2d 730, 734 (1944), and to "provide compensation to a [worker] for the loss of his opportunity to engage in work when his disability is occasioned by an injury suffered from an accident arising out of and in the course of his employment," Burlington Mills Corp. v. Hagood, 177 Va. 204, 211, 13 S.E.2d 291, 293 (1941). Thus, we interpret the Act

consistent with the "'beneficent purpose'" for which the General Assembly enacted it: to attain "'a humanitarian end.'" Simms v. Ruby Tuesday, Inc., 281 Va. 114, 119, 704 S.E.2d 359, 361 (2011) (quoting A. Wilson & Co. v. Mathews, 170 Va. 164, 167, 195 S.E. 490, 491 (1938)).

However, "[w]hile the provisions of the . . . Act are to be liberally construed in favor of the [worker], liberality of construction does not authorize the amendment, alteration, or extension of its provisions. It does not go to the extent of requiring that every claim asserted should be allowed." Humphries v. Newport News Shipbuilding & Dry Dock Co., 183 Va. 466, 479, 32 S.E.2d 689, 695 (1945). "[T]he purpose of the . . . Act is to compensate injured workers for lost wages, not to enrich them unjustly." B.P. Solar v. Jones, 49 Va. App. 322, 327-28, 641 S.E.2d 124, 127 (2007). Additionally, "'[t]he commission's construction of the Act is entitled to great weight on appeal.'" Gallahan, 41 Va. App. at 698, 589 S.E.2d at 15 (quoting Cross v. Newport News Shipbuilding & Dry Dock Co., 21 Va. App. 530, 533, 465 S.E.2d 598, 599 (1996)).

We hold that the commission did not err in applying Code § 65.2-510 and the firing for cause doctrine in this case. Claimant's argument that Code § 65.2-712 provides the sole remedy when a claimant fails to report a return to employment conflates two separate issues: (1) the remedies for recouping overpayment of benefits under Code § 65.2-712; and (2) the termination of benefits for constructive refusal of selective employment under Code § 65.2-510 and the firing for cause doctrine.

Claimant cites Pressure Concrete Constr. Co. v. Coburn, 21 Va. App. 629, 466 S.E.2d 761 (1996), and City of Fairfax v. Massey, 11 Va. App. 238, 397 S.E.2d 679 (1990), in support of his argument that an employer's remedies when an employee fails to report a return to work are limited to recovery of the overpayment by a credit against future compensation benefits or by an action at law. However, in both Coburn and Massey, the employers sought some additional

- 8 -

remedy *under Code § 65.2-712* or its predecessor statute. <u>Coburn</u>, 21 Va. App. at 633, 466 S.E.2d at 763; <u>Massey</u>, 11 Va. App. at 242, 397 S.E.2d at 681. In contrast, in the instant case, employer has proceeded under an entirely different statute, Code § 65.2-510. Code § 65.2-712 and Code § 65.2-510 address different concerns. Each statute provides a different remedy for a distinct problem.

Claimant also argues that the plain language of Code § 65.2-712 indicates that the General Assembly anticipated that a claimant would continue to receive benefits even after he fails to report a return to work because it states that overpayment of benefits may be recovered "by way of credit against future compensation payments due the claimant." Claimant takes this provision of the statute out of context. Code § 65.2-712 states that overpayments may be recovered "*either* by way of credit against future compensation payments due the claimant . . . *or* by action at law against the claimant." (Emphasis added). Therefore, the methods contained in Code § 65.2-712 for an employer to recover overpayments do not show that the General Assembly intended that a claimant's benefits could not be terminated under Code § 65.2-510 for failure to report a return to work. If a claimant's benefits are terminated under Code § 65.2-510, an employer can still recover overcompensation by way of an action at law against the claimant under Code § 65.2-712.

Code §§ 65.2-712 and -510 simply do not conflict, as claimant alleges. Code § 65.2-712 creates a duty for a claimant to report a return to work and provides remedies to an employer for recouping overpayments when a claimant fails to fulfill this duty. Code § 65.2-510, as interpreted by Virginia appellate courts, provides for permanent termination of compensation benefits when a claimant is fired from employer-provided selective employment for justified cause, in this case dishonesty. The two statutes address different issues under the Act.

For these reasons, we hold that Code § 65.2-712 does not prevent the commission from applying Code § 65.2-510. Therefore, the commission did not err in applying Code § 65.2-510 and the firing for cause doctrine in the case at bar.

## C. Claimant's Termination for Justified Cause[5]

In his remaining assignments of error, claimant argues that even if Code § 65.2-510 and the firing for cause doctrine apply in this case, the commission erred in finding that claimant was fired for justified cause.

"An employee's workers' compensation benefits will be permanently forfeited only when the employee's dismissal is 'justified' . . . ." Eppling v. Schultz Dining Programs, 18 Va. App. 125, 128, 442 S.E.2d 219, 221 (1994).

> A "justified" discharge (one which warrants forever barring reinstatement of workers' compensation benefits) does not simply mean that the employer can identify or assign a reason attributable to the employee as the cause for his or her being discharged. Whether the reason for the discharge is for "cause," see Murphy, 12 Va. App. at 639, 406 S.E.2d at 193, or is "justified" for purposes of forfeiting benefits must be determined in the context and purpose of the Act and whether the conduct is of such a nature that it warrants a permanent forfeiture of those rights and benefits.

Id.

To prove a firing for justified cause, "all that is required is a showing: (1) that the wage loss is 'properly attributable' to the wrongful act; and (2) that the employee is 'responsible' for that wrongful act." Artis, 45 Va. App. at 85, 608 S.E.2d at 518 (quoting Walter Reed Convalescent Ctr. v. Reese, 24 Va. App. 328, 336, 482 S.E.2d 92, 97 (1997)). However, "it is

---

[5] In this portion of our opinion, we address claimant's first and second assignments of error: the commission erred in finding that the evidence in the record supports the finding that claimant was fired for dishonesty constituting justified cause for termination resulting in a permanent forfeiture of benefits; and the commission erred in finding that claimant's failure to notify the insurance carrier of his return to work with his pre-injury employer as required by Code § 65.2-712 constitutes grounds for imposing a permanent bar to the receipt of future compensation benefits under the firing for cause doctrine.

- 10 -

not necessary to prove 'that the employee's wrongful act was intentional, willful, or deliberate.'" Id. (quoting Reese, 24 Va. App. at 336-37, 482 S.E.2d at 97).

In Marval Poultry Co. v. Johnson, 224 Va. 597, 601, 299 S.E.2d 343, 346 (1983) (holding that "the employer was justified in discharging Johnson for his two-fold dishonesty"), the Supreme Court of Virginia held that dishonesty can constitute a justified cause for termination of employment. The Court stated, "An employer has the right to demand of his employees a higher standard of honesty in matters pertaining to their employment." Id. at 601, 299 S.E.2d at 345.

Similarly, in the instant case, the commission found that claimant was fired for dishonesty and not for an oversight regarding his compensation payments. Credible evidence in the record supports this determination. Johns testified specifically that claimant was fired "[f]or dishonesty." Claimant testified that he knew he was being overpaid and that if he reported the overpayments, the overpayments would stop. According to Johns, claimant told him that he knew employees should receive either indemnity or light-duty pay, but not both. The commission was entitled to reject claimant's explanation for his failure to report the overpayments and conclude that his actions regarding the overpayments were dishonest. We therefore conclude that the commission did not err in finding that claimant was fired for dishonesty, not for accidental receipt of overpayments.

In addition, we hold that the commission did not err in determining that claimant's firing for dishonesty constituted termination for justified cause. Claimant's dishonesty was properly attributable to claimant's action, and claimant was solely responsible for his wrongful act. See Artis, 45 Va. App. at 85, 608 S.E.2d at 518. Therefore, as in Johnson, claimant's termination for dishonesty constituted justified cause.

We are not persuaded by claimant's argument that his firing was not for justified cause because it was related to his disability and that a holding to the contrary would create a "slippery

slope" whereby future employees would be fired and their benefits terminated for their failure to cooperate with employers in workers' compensation claims. In <u>Timbrook</u>, this Court held that "[i]n order for a discharge for cause to create a forfeiture of workers' compensation benefits under [Virginia precedent], the reason for the discharge must not concern the dispute over the disability compensation claim." 17 Va. App. at 598-99, 439 S.E.2d at 876. Under this rule, claimants who are terminated for their failure to cooperate during workers' compensation claims cannot be found to be fired for justified cause because the reason for their discharge would not be unrelated to a dispute over the compensation claim.

However, unlike the claimant in <u>Timbrook</u>, claimant in the case at bar was not fired over a dispute regarding his compensation claim. Claimant's termination was the result of his dishonesty. Claimant did not believe he was entitled to both the light-duty pay and compensation benefits he was receiving, and there was simply no dispute over claimant's workers' compensation claim at the time he accepted both light-duty pay and temporary total disability benefits. Simply stated, claimant received benefits he knew he was not entitled to receive. Claimant failed to report the overpayment to employer, and the commission reasonably found that this failure constituted dishonesty justifying employer's termination of claimant's employment. Claimant's dishonesty was a wrongful act for which claimant was solely responsible, and credible evidence in the record supported the commission's determination that employer terminated claimant's employment for justified cause.

For these reasons, we hold that the commission did not err in concluding that claimant's employment was terminated for justified cause.

<u>Affirmed.</u>