COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Causey, Raphael and Senior Judge Clements

CHANTAL H. MEHRABANI

v.       Record No. 0084-23-4

BJ'S WHOLESALE CLUB, INC.

MEMORANDUM OPINION*
PER CURIAM
OCTOBER 24, 2023

FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

(Krista N. DeSmyter, on brief), for appellant.

(Timothy D. Watson; Midkiff, Muncie & Ross, P.C., on brief), for appellee.

Chantal Mehrabani appeals the decision of the Workers' Compensation Commission finding that she was entitled to permanent partial disability benefits for the 7% impairment of her right upper extremity. Mehrabani claims that the Commission and deputy commissioner erred "by refusing to apply the humanitarian purpose of the [Workers' Compensation] Act," by failing to consider her testimony, and by relying on a medical opinion that "did not recognize one of [her] causally related disabilit[ies]." After examining the briefs and record in this case, the panel unanimously holds that oral argument is unnecessary because "the appeal is wholly without merit." Code § 17.1-403(ii)(a); Rule 5A:27(a). Finding no error, we affirm the Commission's judgment.

BACKGROUND

"On appeal from a decision of the Workers' Compensation Commission, the evidence and all reasonable inferences that may be drawn from that evidence are viewed in the light most favorable to the party prevailing below." *Anderson v. Anderson*, 65 Va. App. 354, 361 (2015)

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

(quoting *Artis v. Ottenberg's Bakers, Inc.*, 45 Va. App. 72, 83 (2005) (en banc)). Mehrabani worked as a cashier for BJ's Wholesale Club, Inc. (employer). On August 11, 2019, she tripped and fell, sustaining a compensable injury by accident to her right hand and arm. Mehrabani fractured her fourth and fifth metacarpal bones in her hand. She underwent two surgeries in connection with her injury, the first in August 2019, to repair the fractured bones in her hand, and the second in November 2019, to remove the hardware placed during the initial surgery. After receiving two awards of temporary total disability benefits, Mehrabani filed a claim for permanent partial disability benefits on November 12, 2021. She claimed that she had suffered an 85% permanent impairment to her upper right extremity. Employer agreed that Mehrabani had a 7% permanent partial impairment to her upper right extremity but disputed any greater impairment.

At a hearing before the deputy commissioner, the parties presented evidence, including Mehrabani's testimony and conflicting expert opinions regarding Mehrabani's level of impairment. Mehrabani testified that she continued to experience pain in her right hand and arm after her surgeries. She described the pain as "[s]ometimes . . . sharp," with occasional "itching" and "tingling." Mehrabani stated that she experienced pain "[a]ll the time" in the top of her hand from her ring finger to the outside of her hand. She noted that she sometimes felt a "cramping" pain radiating to her elbow. Mehrabani also presented medical records from the National Spine & Pain Center diagnosing and treating her for complex regional pain syndrome in 2020 and 2021. The pain center did not issue any work restrictions, and Mehrabani did not return for further treatment after January 2021.

Mehrabani underwent two independent medical examinations to assess her level of permanent impairment. Orthopedic surgeon Dr. Richard Meyer evaluated her on September 16, 2021. In Dr. Meyer's opinion, Mehrabani was 85% impaired in her right upper extremity as a result of her injuries. In reaching that conclusion, Dr. Meyer considered Mehrabani's "finger

impairment" in her second, third, fourth, and fifth digits, her loss of grip strength, loss of wrist and hand motion, and her "diagnosis of complex regional pain syndrome."  Using tables in the Fifth Edition of the AMA Guides of Evaluation of Permanent Impairment, Dr. Meyer assigned a 20% upper extremity permanent partial impairment to Mehrabani's loss of grip strength, a 23% upper extremity permanent partial impairment based on the impairments to four fingers, and a 2% upper extremity permanent partial impairment based on her "loss of supination."  Adding these impairments to Mehrabani's CRPS, Dr. Meyer concluded that Mehrabani had a total 85% upper extremity permanent partial impairment rating.

Orthopedic surgeon Dr. Imran Khan examined Mehrabani on March 17, 2022.  In Dr. Khan's opinion, Mehrabani suffered a 7% impairment in her right upper extremity.  In reaching his opinion, Dr. Khan used "the methodology for pain resulting from the ulnar nerve."  Dr. Khan noted that the "maximum impairment for the ulnar nerve below the mid forearm . . . is 7% upper extremity impairment."

Unlike Dr. Meyer, Dr. Khan considered only Mehrabani's "ring and small" fingers in assessing her loss of motion.  He opined that she had an 11% impairment in her small finger and a 6% impairment in her ring finger.  According to the table in AMA Guide, those two fingers constituted 2% of the upper extremity; therefore, "[c]ombining the 2% upper extremity impairment for digital motion loss with 6% upper extremity impairment for neuropathic pain," Dr. Khan concluded that Mehrabani was 7% impaired in her right upper extremity.[1]

---

[1] Dr. Meyer prepared a second report responding to Dr. Khan's report and criticizing Dr. Khan's failure to include Mehrabani's diagnosis of complex regional pain syndrome in his assessment.  Dr. Meyer also disagreed with Dr. Khan's criticism that Dr. Meyer's 85% impairment rating was too high because "a complete amputation across the metacarpophalangeal joints of the hand would result in a 90% upper extremity impairment."  In Dr. Meyer's opinion, an "amputation rating is different" from the type of impairment rating Dr. Meyer performed.

The deputy commissioner found that Dr. Meyer's opinion was unsupported by the record. She noted that Dr. Meyer included two uninjured fingers in reaching his opinion. The deputy commissioner also agreed with Dr. Khan that Dr. Meyer "improperly combined ratings for loss of grip strength and complex regional pain syndrome." The deputy commissioner emphasized that, whereas Dr. Khan "fully explained how he calculated his impairment rating," Dr. Meyer did not "explain how he arrived at ratings for the upper extremity based on injury primarily to the fingers/hand." Finally, the deputy commissioner noted that, although Mehrabani testified she had continued pain and limitations, she had been released to work without restrictions and had not sought medical treatment for over a year.

Mehrabani appealed to the full Commission. She asserted that the deputy commissioner had failed to consider her testimony "in a meaningful way" and, by adopting Dr. Khan's opinion over that of Dr. Meyer, she had "failed to apply the humanitarian purpose of the Virginia[] Workers' Compensation Act." The Commission ruled that the deputy commissioner had considered the record as a whole in reaching his decision, including Mehrabani's testimony. While it recognized "the Act's underlying humanitarian purposes," the Commission concluded that "a 7% permanent partial impairment was the amount most convincingly established as appropriate and substantiated by the evidence."

This appeal follows.

ANALYSIS

Mehrabani asserts that the Commission "failed to comply" with "the humanitarian and benevolent purpose of the Workers' Compensation Act" because it failed to explain how its decision and analysis were consistent with that purpose. She contends that the Commission failed to comply with that purpose when it placed more weight on Dr. Khan's opinion than that of Dr. Meyer or her own testimony. Mehrabani asserts that the Commission adopted Dr. Khan's

report despite its failure to address "all of [her] disability," and contends that the Commission should have rejected Dr. Khan's report because he failed to consider "how the injury to the fourth and fifth digits would affect the second and third digits." Mehrabani argues that Dr. Khan's impairment rating "did not explain how [her] CRPS impacted her permanent partial disability," and addressed her CRPS only to suggest that "a grip disability was inappropriate" because she has CRPS. Moreover, she stresses that Dr. Khan's rating was based on her "'neuropathic pain' in the right ulnar" when she was never diagnosed with that condition. Further, she maintains that Dr. Khan's rejection of Dr. Meyer's opinion is not credible because Dr. Khan mistakenly assumed that Dr. Meyer did not use the combined values chart, when Dr. Meyer did, in fact, use the combined values chart. Finally, Mehrabani stresses that, while Dr. Meyer's report was criticized for failing to "explain how he converted a finger/hand injury into a right upper extremity disability," the tables Dr. Meyer used "either measured the upper extremity directly or . . . explained how to convert . . . a hand impairment to an upper extremity impairment." Thus, Mehrabani argues that the Commission rejected Dr. Meyer's opinion based on an unfounded finding that Dr. Meyer's analysis was faulty. She asserts that the Commission's decision should be reversed because it adopted Dr. Khan's criticisms of Dr. Meyer's report without reading it "in conjunction with the AMA Guides." Mehrabani argues that the Commission and deputy commissioner erroneously assumed that employer's medical evaluation was correct "as a 'default.'" We disagree.[2]

The "factual findings of the commission will not be disturbed if based on credible evidence." *Hess v. Virginia State Police*, 68 Va. App. 190, 194 (2017) (quoting *Anthony v. Fairfax Cty. Dep't of Family Servs.*, 36 Va. App. 98, 103 (2001)). "'The scope of a judicial review of the

---

[2] We do not review the deputy's decision because our appellate jurisdiction does not extend to decisions made by deputy commissioners; rather, we are limited to reviewing "final decision[s] of the Virginia Workers' Compensation Commission[.]" Code § 17.1-405(2).

fact finding function of a workers' compensation commission . . . is "severely limited, partly in deference to the agency's expertise in a specialized field."'" *Roske v. Culbertson Co.*, 62 Va. App. 512, 517 (2013) (quoting *Southside Va. Training Ctr. v. Ellis*, 33 Va. App. 824, 828 (2000)). "The credibility of an expert witness and the weight assigned to an expert opinion are factual matters within the purview of the Commission." *Paramount Coal Co. Virginia, LLC v. McCoy*, 69 Va. App. 343, 358 (2018). "Questions raised by conflicting medical opinions must be decided by the commission." *Cent. Virginia Obstetrics & Gynecology Associates, P.C. v. Whitfield*, 42 Va. App. 264, 279 (2004) (quoting *Wolfe v. Virginia Birth-Related Neurological Injury Comp. Program*, 40 Va. App. 565, 580 (2003)). "This appellate deference is not a mere legal custom, subject to a flexible application, but a statutory command making clear that the commission's decision 'shall be conclusive and binding as to all questions of fact.'" *Id.* (quoting Code § 38.2-5011(A)). "[W]e are bound by the [C]ommission's findings of fact as long as 'there was credible evidence presented such that a reasonable mind *could* conclude that the fact in issue was proved,' even if there is evidence in the record that would support a contrary finding." *Artis*, 45 Va. App. at 83-84 (quoting *Westmoreland Coal Co. v. Campbell*, 7 Va. App. 217, 222 (1988)).

"A party seeking workers' compensation bears the burden of proving his disability and the periods of that disability." *Jalloh v. Rodgers*, 77 Va. App. 195, 207 (2023) (quoting *Vital Link, Inc. v. Hope*, 69 Va. App. 43, 64 (2018)). We recognize "the humanitarian purpose of the Act [is] . . . to provide compensation and medical treatment to employees for injuries they have sustained in the course of and arising out of their employment." *Ceres Marine Terminals v. Armstrong*, 59 Va. App. 694, 702 (2012); *see also A. Wilson & Co. v. Matthews*, 170 Va. 164, 167 (1938) (same). But Mehrabani cites no authority, and we are aware of none, holding that this overarching purpose relieves a claimant of her burden of proof or alters our deference to the

Commission's factual findings. Indeed, Mehrabani agrees that "an injured worker must present evidence demonstrating their [sic] disability and the periods of that disability."

Here, the Commission found that Dr. Khan's opinion regarding the extent of Mehrabani's permanent disability was more credible than that of Dr. Meyer. Based on the record, "there was credible evidence presented such that a reasonable mind *could* conclude" that Dr. Khan's opinion regarding Mehrabani's disability was more credible. *Artis*, 45 Va. App. at 84 (quoting *Campbell*, 7 Va. App. at 222). The record contains credible evidence from which a reasonable mind could conclude that Dr. Khan's 7% permanent partial impairment rating was more credible than Dr. Meyer's 85% permanent partial impairment rating. Dr. Meyer considered four of Mehrabani's fingers in calculating his disability rating, whereas Dr. Khan considered only her two injured fingers. Moreover, Dr. Khan, who assessed Mehrabani six months after Dr. Meyer, found that Mehrabani had "essentially normal supination." Further, Dr. Khan noted that, while Dr. Meyer claimed that tables in the AMA Guide treated "loss of grip strength" as a "20% upper extremity impairment," that same guide cautioned that "[d]ecreased strength *cannot be rated in the presence* of decreased motion, *painful conditions*, deformities, or absence of parts that prevent effective application of maximal force in the region being evaluated." (Emphasis added). Dr. Khan therefore reasoned that "[t]he loss of grip strength is specifically excluded in the AMA Guides 5th Edition from being combined with impairments for complex regional pain syndrome." Dr. Khan quoted the Guide as stating that "[n]o additional impairment is given for decreased pinch or grip strength."

Despite the foregoing, Dr. Meyer expressly combined those conditions in reaching his 85% impairment rating, linking his "rating specifically to the hand loss of motion, the finger loss of motion, the wrist loss of motion, the loss of supination, the loss of grip strength, *and* the diagnosis of complex regional pain syndrome." (Emphasis added). Finally, as a further basis for

- 7 -

rejecting Dr. Meyer's permanent partial impairment rating, the Commission emphasized Dr. Meyer's impairment rating for two broken fingers was nearly equivalent to the 90% upper extremity impairment rating associated with the total loss of a claimant's fingers. When Dr. Meyer responded to Dr. Khan's critique of his report, he offered no defense to that assessment other than to state that "an amputation rating is different from a rating based on factors related to the evaluation [he] performed," characterizing them as "comparing 'apples and oranges.'"

Accordingly, because the Commission's factual finding rejecting Dr. Meyer's opinion in favor of Dr. Khan's opinion is supported by credible evidence in the record, it is binding on this Court and we will not disturb it on appeal. We therefore affirm its decision awarding Mehrabani permanent partial disability benefits based on a 7% impairment of the right upper extremity.

## CONCLUSION

The Commission's decision is affirmed.

*Affirmed.*